**STE. PIERRE SMIRNOFF, FLS., Inc. v. HIRSCH et al.**

**Civ. A. No. 13,233–T.**

United States District Court
S. D. California, Central Division.
Dec. 9, 1952.

Gail B. Selig, of Wilson, Selig & Cotter, Los Angeles, Cal., Richard W. Blum, of Mock & Blum, New York City, for plaintiff.

Collins Mason, of Mason & Graham, Mitchell & Gold, Los Angeles, Cal., for defendants.

TOLIN, District Judge.

The Complaint alleges that defendants' use of the trade-mark "Smarkoff" for vodka infringes the following registered trademarks owned by plaintiff:

Registration No. 309,865
Registration No. 326,253
Registration No. 328,594

Registration No. 330,899
Registration No. 394,058
Registration No. 513,428

Unfair competition is also charged.

Plaintiff is a Connecticut corporation, organized January 12, 1939. It is the successor to a New York corporation of the same name which was organized September 19, 1933.

Defendants are citizens and residents of California.

In 1818 a Mr. Pierre Smirnoff began to make and sell vodka in Russia under his surname "Smirnoff". The business was continued in Russia by his descendants under the "Smirnoff" name. The "Smirnoff" vodka attained a considerable reputation in Russia.

After the Bolshevik revolution the owners of the "Smirnoff" business fled to Poland where they established a firm which did business in Poland, France and elsewhere.

In August 1933, in consideration of a lump sum, the Polish firm sold its rights for the United States of America to its trademarks, formulas and processes to Mr. Rudolph Kunett. Mr. Kunett's rights were later transferred to the New York predecessor of plaintiff.

Beginning in 1934, this predecessor New York corporation began to sell "Smirnoff" vodka nationally, including sales in California.

The New York corporation secured Registration No. 330,899 on December 17, 1935, under the former Trade-Mark Act of 1905, which was replaced on July 5, 1947 by the Lanham Trade-Mark Act of July 5, 1946 which went into effect on July 5, 1947, 15 U.S.C.A. § 1051 et seq.

The registered mark No. 330,899 displayed the corporate name of the New York corporation, the picture of a crown, and the pictures of four medals granted for the original Russian vodka in 1877, 1882, 1886 and 1889. It also registered "Pierre Smirnoff" as No. 326,253 on July 16, 1935 under the Trade-Mark Act of March 19, 1920.

When plaintiff became the successor to the said corporation, it secured an additional registration under the Act of February 20, 1905. This registration was No. 394,058, issued March 17, 1942 for "Smirnoffka".

From the beginning the domestic vodka of plaintiff and its predecessor had been plainly marked and advertised as being of domestic origin.

During World War II defendants manufactured a vodka which they sold under a trade-mark and name dissimilar to those involved in this litigation. It enjoyed modest success in a firmly established market wherein defendants also sold other alcoholic beverages. During the war years there was difficulty in obtaining high-grade distilling material and some of defendants' established trade complained of a falling off of good-will for defendants' vodka because of inferiority of the product attributable to war conditions. After defendants returned to their prior standard of product, they sought to recapture such of the vodka market they had lost and to re-establish complete good will with such as they had retained. In aid of this project they renamed one of their brands "Smarkoff". Defendants' testimony is that they coined the name "Smarkoff" by combining parts of the names of two Russian cities. As compared to plaintiff's open, extensive and exclusive claim of exclusive right, defendants have used the name "Smarkoff" only since May 25, 1948. It is one of several brand names under which defendants' vodka is sold. It is conceded that "Smirnoff" is a family name and while not conceded by defendants, it is established that plaintiff is the rightful successor of the original users. "Smarkoff" is a coined name.

Plaintiff has long advertised its product in magazines of national circulation and has induced hotels to feature the "Smirnoff" vodka on menus. Defendants did no substantial advertising of their "Smarkoff" vodka. They did no magazine advertising but did procure the listing of their product in catalogs and publications which circulated only in the trade. They relied upon the solicitation of wholesalers, jobbers, etc. by their salesmen who also sold defendants' full line of liquor. They relied largely on the already established good will of their firm. The evidence is not clear when plaintiff first learned of defendants' use of the name "Smarkoff".

The Lanham Act[1] went into effect on July 5, 1947 and defendants began to use "Smarkoff" on May 25, 1948 after plaintiff had registered its several marks which include the name "Smirnoff".

■ The evidence is undisputed that plaintiff notified defendants on April 25, 1951 that it deemed "Smarkoff" an infringement of its right and called upon defendants to desist. It also is undisputed that although "Smarkoff" is a coined word, the "Smark" portion of it imparts to the entire word a meaning so odious to a person familiar with the Russian language, that it is not an appropriate name for a Russian beverage. It is not difficult to find, and it would be extremely difficult not to find, that the trade-mark "Smarkoff" as viewed by the conventional retail purchaser, is so similar to "Smirnoff" as to amount to a colorable imitation of a registered mark, likely to cause confusion or mistake or to deceive purchasers as to the source of the contents of the bottles so labeled. This is prohibited by the Lanham Act, 15 U.S.C.A. § 1114(1) (a), which forbids:

"* * * use, without the consent of the registrant, any reproduction, counterfeit, copy, or *colorable imitation* of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use *is likely to cause confusion* or mistake or to deceive purchasers as to the source of origin of such goods or services; * * *." (Emphasis supplied.)

For a discussion of the principles applied by courts in determining whether marks are confusingly similar, see N. K. Fairbank Co. v. Luckel, King & Cake Soap Co., 9 Cir., 102 F. 327; and American Distilling Company v. Bellows & Company, Inc., 102 Cal.App.2d 8, 226 P.2d 751.

Plaintiff has not proved any pecuniary loss and very little actual confusion but it has proved a high potential for confusion and the climate and ingredients for a free ride by defendants upon the expensively established and nurtured name and good will of plaintiff's product and the trademarks protective of its name. Plaintiff is old in the field, defendants newcomers. In Stork Restaurant, Inc. v. Sahati, 9 Cir., 166 F.2d 348, at page 361, it was said:

"This thought that a newcomer has an 'infinity' of other names to choose from without infringing upon a senior appropriation runs through the decisions like a *leitmotiv*."

■■ Defendants contend that plaintiff is without a protective right because it is a mere licensee while the original "Smirnoff" concern still operates abroad. The evidence shows that plaintiff is the owner by virtue of a purchase for a lump sum of the entire exclusive and irrevocable right in the business, good will of the business, and the name "Smirnoff" within the United States. It has been repeatedly held over a long period of time that the grant of an exclusive and irrevocable right to use a mark in a designated territory is an assignment and not a mere license. The territory here is as broad as that protected by the Lanham Act. It is the entire United States, its possessions and territories.

See Scandinavia Belting Co. v. Asbestos & Rubber Works of America, Inc., 2 Cir., 257 F. 937, at page 955, wherein the following appears:

"* * * one who has the exclusive right to use a trade-mark in the United States has such a special ownership therein as entitles him to its registration during the period of his exclusive use. * * *"

See Griggs, Cooper & Co. v. Erie Preserving Co., C.C., W.D.N.Y., 131 F. 359, in which it was held that an exclusive license under trade-marks is not "* * * a mere license, but assigns the exclusive ownership and good will in the trade-marks, * * *."

■ The question next arises as to the scope of relief to be granted to plaintiff. It seeks damages, an accounting of profits,

1. The Lanham Act, 15 U.S.C.A. § 1072, provides: "Registration of a mark on the principal register provided by this chapter or under the Act of March 3, 1881, or the Act of February 20, 1905, shall be constructive notice of the registrant's claim of ownership thereof. * * *".

and an injunction. It has not offered evidence of substantial past confusion or loss of business. It has shown past and present invasion of its rights, a threat of continuance thereof, and a reasonable certainty of confusion of goods in the future. The evidence shows that plaintiff's business has increased beyond mere simple prosperity. During the past twelve years plaintiff did $14,000,000 worth of "Smirnoff" business in vodka sales. All but about $275,000 of those sales took place in the years 1948 to 1952. In the Los Angeles Area alone, sales of "Smirnoff" vodka have increased from 3,040 cases in 1946 (the first full post-war year) to 107,670 cases during the first eight months of the current year. In the full year 1951, 120,952 cases were sold in this immediate area. It complains that defendants have also prospered and attributes that prosperity to the appropriation by defendants of the name "Smarkoff" in infringement of plaintiff's trade-marks. This it has not proved. The good will of vodka as a beverage is rapidly increasing in the United States. The setting is such that unless restrained, defendants will continue a course of conduct reasonably certain to bring about the confusion in customer minds which equity will seek to inhibit by injunction. This justifies the full injunctive relief sought. Defendants had a substantial business in vodka before they simulated plaintiff's trade-mark. They had made substantial sales to regular customers, purveying their vodka under a name dissimilar to "Smarkoff". When the misfortunes of war and the impossibility of manufacturing to pre-war standard during the war brought about a deterioration of their product, they changed the name contemporaneously with their ability to again deliver vodka according to their former standard of quality. They sold to the same customers who were willing to continue to deal with them even though the good will of their particular product had so suffered that a change of brand name was necessary. It is impossible for the Court to determine how much of defendants' increase in vodka sales has resulted from a general popularizing of the beverage, how much to the natural increase of business with those who already accorded defendants substantial good will, and how much has amounted to a free ride upon the good will of plaintiff. Among these uncertainties there is the reasonable certainty that strong likelihood of confusion of products by reason of similarity of names exists. In view of the uncertainties, the judgment must limit plaintiff to its clear right to injunctive relief against further use of the name "Smarkoff" with respect to vodka, and must deny plaintiff the conventional remedy of an accounting for profits because of the impossibilities which would stultify any master asked to hear an accounting. Defendants have positioned themselves for a free ride but, to the present time, the Court cannot say that they have done more than create a situation in which confusion of product is bound to occur if they be permitted to continue use of the name "Smarkoff".

Plaintiff will submit findings and an appropriate injunction.