**CHECKER FOOD PRODUCTS COM-
PANY, a corporation, Appellant,
v.
RALSTON PURINA COMPANY a cor-
poration, Appellee.**

No. 15345.

United States Court of Appeals
Eighth Circuit.

April 30, 1956.

Rehearing Denied May 25, 1956.

Murray Steinberg, St. Louis, Mo. (Richard Marx and Melvin Friedman, St. Louis, Mo., were with him on the brief), for appellant.

478

John D. Pope, III, St. Louis, Mo. (Donald G. Leavitt, Frederick A. Judell, and Koenig & Pope, St. Louis, Mo., were with him on the brief), for appellee.

Before SANBORN, JOHNSEN and VOGEL, Circuit Judges.

SANBORN, Circuit Judge.

This is an appeal by the plaintiff (appellant) from a judgment dismissing its action brought in December, 1951, under the Trade-Mark Act, 15 U.S.C.A., §§ 1116, 1117, 1121, upon the claim that the defendant (appellee) had infringed the plaintiff's trade-mark rights in the name "Checker," and had engaged in unfair competition.

Each of the parties is a Missouri corporation with its principal place of business in St. Louis, Missouri.

The plaintiff in its complaint alleged that since about March 15, 1936, it has been engaged in the sale at wholesale of breakfast foods made from grains and particularly from rice and wheat; that since the inception of its business it has engaged in nationwide advertising of its trade-marks "Checker Rice Puffs" and "Checker Wheat Puffs," which has resulted in the association of those names with the plaintiff's products in the minds of the buying public; that in 1951 the defendant advertised the manufacture and sale by it of breakfast foods and cereals known as "Rice Chex" and "Wheat Chex"; that the use of these names was a "direct infringement on the good will and trade-mark built up by plaintiff," and was done for the purpose of misleading and deceiving the buying public into believing that the products of the defendant are in some way associated with the favorably known business of the plaintiff in the sale of "Checker Rice Puffs" and "Checker Wheat Puffs"; that the defendant's conduct in this regard is likely to cause confusion in the minds of buyers as to the source of the defendant's products, and constitutes unfair competition; and that the defendant, after being notified by the plaintiff of its demand that the defend-ant stop using the names "Rice Chex" and "Wheat Chex," has refused to do so.

The defendant in its answer admitted that the plaintiff had sold some puffed rice and puffed wheat in packages, and stated that the defendant in 1951 had sold, under the trade-mark "Chex", a shredded rice biscuit breakfast food and a shredded wheat biscuit cereal. The defendant denied that this constituted an infringement of the plaintiff's trade-marks or unfair competition. The defendant alleged that it has been engaged in the milling business for more than 50 years; that its principal products throughout this period have been breakfast cereals and animal feeds; that its total sales have amounted to billions of dollars and its sales of breakfast cereals to over one hundred million dollars; that for more than 50 years a marking of contrasting colored squares, known as the "checkerboard" marking and registered in the United States Patent Office as the defendant's trade-mark for the various products sold by the defendant, has been used continuously by it and has come to be known by the public as the generic trade-mark for the defendant's products, and that it appears upon every unit of the products, of which the plaintiff complains. The defendant further alleged that it had used the mark "Checker" since 1922 on animal feeds and had registered that mark in the Patent Office; that the defendant had also used the registered trade-mark "Checkr-" on breakfast cereals since 1927; and that, "should the average purchaser of breakfast cereals associate the mark 'Chex' with the term 'check' or combining forms thereof, * * * the average purchaser of breakfast cereals will necessarily associate the mark 'Chex' with defendant rather than with plaintiff."

The issues raised by the pleadings were tried to the court. There was little dispute as to the evidentiary facts, and many of them were stipulated. The controlling issue in the case was, as it usually is and has been in all such cases, see McLean v. Fleming, 96 U.S. 245, 252–256, 24 L.Ed. 828; Kann v. Diamond

Steel Co., 8 Cir., 89 F. 706, 707, whether there was any confusing or deceptive similarity between the marks used by the defendant upon its shredded rice and shredded wheat breakfast foods, namely "Rice Chex" and "Wheat Chex", on cartons with a checkerboard design, and the marks used by the plaintiff—in the sale of its puffed rice and puffed wheat products—upon its cellophane packages and cartons, namely "Checker Rice Puffs" and "Checker Wheat Puffs."

The original corporate name of the plaintiff was Gandolfo-Ghio Manufacturing Company. It was incorporated in 1896. The name was changed to Checker Food Products Company, which name has been used since 1927. Its president purchased some of its capital stock in 1934, and eventually acquired all of such stock. After 1934 the plaintiff was selling spaghetti, macaroni, egg noodles, cream meal, pancake flour, soup mixes, puffed wheat, and puffed rice. Most of these items were sold under the Checker label. The name "Checker" has been used on products of the plaintiff since about 1920. The plaintiff (then Gandolfo-Ghio Manufacturing Company) on September 20, 1920, applied for registration of the trade-mark "Checker" for spaghetti, macaroni, vermicelli, and noodles, and it was registered in the United States Patent Office on December 13, 1921, as No. 149,384. The registration was renewed December 13, 1941, to Checker Food Products Company. Puffed wheat and puffed rice are the major products now being sold by the plaintiff. They are not manufactured by the plaintiff, but by a corporation the capital stock of which is also owned by the plaintiff's president. The plaintiff's fiscal year ends August 31st. The largest amount the plaintiff derived from its sales of puffed wheat and puffed rice in any year from 1944 to 1951 was $153,-097.76 in 1945. There was a sharp falling off in the sales of these products of the plaintiff after the war. In 1950 sales amounted to $75,072.64, and in 1951 to $94,748.64.

The plaintiff sells puffed wheat and puffed rice in 46 states and in the District of Columbia. Outside of the metropolitan area of St. Louis, sales are made through food brokers. The plaintiff advertises by giving premiums and sales incentives to dealers, and in newspapers, and may have done some radio advertising. It runs some advertisements in cooperation with customers. It packages its products in cellophane bags or in small cartons wrapped with waxed paper.

Since 1938 the plaintiff has had no dispute or litigation with the defendant. From 1937 or 1938 until the spring of 1950, the defendant made no claim against the plaintiff for the use of any name and the plaintiff made no such claim against the defendant. There had been some prior litigation. See Ralston Purina Co. v. Checker Food Products Co., Mo.App.1935, 80 S.W.2d 717, in which the Ralston Purina Company charged the Checker Food Products Company with unfair competition, and in which it was held that there was no reasonable probability of confusion between the then style of dress and designation adopted by the parties for their respective products, at page 720 of 80 S.W.2d.

In the early part of April, 1950, the defendant offered to purchase the plaintiff's rights in the name "Checker" for $20,000. The offer was refused by the plaintiff's president.

The use by the defendant of the name "Rice Chex" came to the plaintiff's attention about December, 1950, or January, 1951, and the use of the name "Wheat Chex" was first noticed about August, 1951. Demand was made upon the defendant to cease using those names.

Prior to using the names "Checker Rice Puffs" and "Checker Wheat Puffs," the plaintiff had sold these same products in 1937 and 1938 under the names "Checker Rice Pops" and "Checker Wheat Pops". It used the name "Checker Exploded Rice" from about 1938 to 1948. Since then it has used the names which it asserts the defendant has simulated by selling its shredded wheat and

shredded rice products as "Wheat Chex" and "Rice Chex".

The plaintiff introduced some evidence tending to support its claim that the names it used in marketing its products were confusingly similar to the names used by the defendant and that purchasers asking for the plaintiff's products had been handed defendant's products.

It was stipulated that the "Defendant is presently and has been widely known for many years as one of the nation's foremost manufacturers of breakfast cereal foods, and has a national reputation as one of the foremost manufacturers of breakfast cereal foods." The defendant was incorporated about January 8, 1894, as Robinson-Danforth Commission Company. In 1899 its name was changed to Robinson-Danforth Milling Company, and to Ralston Purina Company in 1902. Its net cereal sales from 1903 to January 1, 1951, exceeded $163,000,000. Its shredded rice product now being sold as "Rice Chex" was first sold in 1950; and prior to January 1, 1951, sales of that product amounted to more than $883,000, and from January 1, 1951, to February 29, 1952, amounted to more than $1,900,000. The defendant's shredded wheat product now being sold as "Wheat Chex" was first placed on the market in 1935, and total sales of that product up to January 1, 1951, amounted to more than $34,000,000. From January 1, 1951, to February 29, 1952, sales of "Wheat Chex" amounted to more than $4,000,000. The defendant first packaged its shredded wheat product as "Wheat Chex" on January 22, 1951. Since its incorporation, the defendant's principal products have been foods for human consumption (mainly breakfast cereals) and animal feeds. The rice product of the defendant sold as "Rice Chex" is a biscuit-type product made of shredded rice, and is not a puff. The product "Wheat Chex" is a biscuit-type product made of shredded wheat, and is not a puff. The plaintiff's product sold as "Checker Rice Puffs" is not a biscuit-type product and is not made of shredded rice, nor is the plaintiff's product which is sold as "Checker Wheat Puffs" a biscuit-type product made of shredded wheat.

For at least 50 years defendant has used a checkerboard motif as a trademark on substantially all of its products, including breakfast cereal foods. Total sales of all its products have amounted to billions of dollars.

The defendant's first registered trademark, No. 35,569, was dated December 11, 1900, for "Checkerboard" and a checkerboard design for cereal food products. Since that time the defendant has registered trade-marks for its various products, perpetuating its right to use that design for identifying them. It has also registered and used such trade-marks as "Checkr-", "Checker", "Check-R-Chix", "Chek-R-Fect", and many others of a similar nature.

It was stipulated that these registrations were valid, subsisting and owned by the defendant. The defendant's registration of the trade-mark "Chex", dated May 27, 1952, was applied for July 22, 1950, and is No. 559,285.

The defendant, at the trial, introduced evidence tending to show that there was no confusion and no confusing similarity between its accused trade-marks as applied to its shredded rice and shredded wheat products and the trade-marks used by the plaintiff in marketing its puffed rice and puffed wheat.

Enough has been said to indicate the nature of the controversy and to show that the issue of confusing similarity was an issue of fact for the trial court and not an issue of law for this Court. There is no merit in the plaintiff's contention that confusing similarity was conclusively established by the evidence. What the plaintiff is, in effect, asking this Court to do is to retry this case and to substitute its judgment for that of the trial court. This the Court will not do. See and compare, Cleo Syrup Corporation v. Coca-Cola Co., 8 Cir., 139 F.2d 416, 417–418, 150 A.L.R. 1056; Seven Up Co. v. Cheer Up Sales Co. of St. Louis, Mo., 8 Cir., 148 F.2d

909, 911. The determination of the trial court that there was no confusing similarity between the trade-marks in suit and that the defendant had not infringed the plaintiff's trade-mark rights and had not engaged in unfair competition is not erroneous. The burden of proving confusing similarity was that of the plaintiff, and the defendant, as the prevailing party, is entitled to the benefit of all reasonable inferences which can be drawn from the evidence, viewed in the aspect most favorable to it. Cleo Syrup Corporation v. Coca-Cola Co., at page 418 of 139 F.2d; Clarke Hybrid Corn Co., Inc., v. Stratton Grain Co., 8 Cir., 214 F.2d 7; Lanza v. Carroll, 8 Cir., 216 F. 2d 808, 814.

We take the liberty of saying that a comparison of the products, packages and labels used by the respective parties indicates to us that no ordinarily prudent purchaser in possession of his faculties and at all interested in the source of the breakfast food he was buying would have the slightest difficulty in distinguishing the defendant's accused products from those of the plaintiff and determining their source.

The judgment appealed from is affirmed.