**HEUBLEIN, INC., doing business as Ste Pierre Smirnoff FLS, Plaintiff,**

v.

**DAVID SHERMAN CORPORATION, doing business as The Sarnoff Company, Defendant.**

No. 60 C 287(1).

United States District Court
E. D. Missouri, E. D.
Oct. 18, 1963.

Gravely, Lieder & Woodruff, St. Louis, Mo., Blum, Moscovitz, Friedman & Blum, New York City, for plaintiff.

Koenig, Pope, Senniger & Powers, St. Louis, Mo., for defendant.

HARPER, Judge.

This action was brought by Heublein, Inc., doing business as Ste Pierre Smirnoff Fls, a Connecticut corporation, against David Sherman Corporation, doing business as The Sarnoff Company, a Missouri corporation, for an injunction to restrain the alleged infringement of plaintiff's trademark and for unfair competition.

The defendant's answer raises the defenses of laches and unclean hands, with the latter also forming the basis of a counterclaim.

Jurisdiction is conferred on this court under the Lanham Act, under which the suit is brought, and 28 U.S.C.A. § 1338.

More specifically, the complaint alleges that defendant's use of SARNOFF and its labels on vodka infringed the following registered trademarks owned by plaintiff: Registration No. 513,428, procured on August 9, 1949, for the name of SMIRNOFF for vodka under the Lanham Act, which registration was procured by the immediate predecessor of the plaintiff; Registration No. 328,594, procured on October 1, 1935, for a crown and drape design for vodka issued to plaintiff's predecessor; Registration No. 330,899, procured on December 17, 1935, for a crown design and the name Ste Pierre Smirnoff for vodka, issued to plaintiff's predecessor; and Registration No. 623,237, procured on March 13, 1956, to plaintiff for the name Pierre Smirnoff for vodka.

Heublein, Inc., is a corporation organized under the laws of the State of Connecticut, with its office and principal place of business in Hartford, Connecticut. It does business under the trade name and style of Ste Pierre Smirnoff Fls, at 330 New Park Avenue, Hartford 1, Connecticut. Gilbert Heublein founded the company in approximately 1873. The company was incorporated in approximately 1899. The company has handled liquors and wines since its inception except during the prohibition.

It first became connected with SMIRNOFF vodka in 1936 or 1937. It represented the Smirnoff Company of New York, namely Ste Pierre Smirnoff Fls, Inc., in the State of Pennsylvania. Ste Pierre Smirnoff Fls, Inc., was incorporated as a New York corporation on September 19, 1933, with its offices in New York and its plant in Bethel, Connecticut. Rudolph Kunett was president and chief stockholder of the New York corporation, and Vladimir Smirnoff was chairman of the board. The New York corporation was dissolved on May 25, 1942.

In 1939 the New York corporation sold out its business and assets to a Connecticut corporation, or to put it more directly, plaintiff's company took over the business of Mr. Kunett. This corporation was the Ste Pierre Smirnoff Fls, Inc., of Connecticut, plaintiff's immediate predecessor, of which plaintiff is the successor in business. The plant was moved from Bethel to Hartford. The Connecticut corporation was voluntarily dissolved in 1954 and plaintiff has been doing business as Ste Pierre Smirnoff Fls since 1955.

In 1818, a Mr. Pierre Smirnoff began to make and sell vodka in Russia under his surname Smirnoff. The business was continued in Russia by his descendants under the Smirnoff name. SMIRNOFF vodka attained a considerable reputation in Russia, being the only nationally known brand of vodka in Russia. SMIRNOFF vodka was sold in Russia until the Revolution.

After the Bolshevik revolution the owners of the SMIRNOFF business fled to Poland where they established a firm making vodka which did business in Poland, France and elsewhere.

In August 1933, in consideration of a lump sum, the Polish firm, Pierre Smirnoff Sons, sold its rights to its trademarks, formulae and processes to Rudolph Kunett for its United States, Canada, Mexico and United States possessions. Kunett was born in Russia and lived there until 1913 and came to the United States in 1920. He was acquainted with the Smirnoff family in Russia and knew Vladimir Smirnoff, his father and brother on a personal basis. It was

because of Kunett's contacting Smirnoff that the above agreement was consummated. Mr. Kunett's rights were later transferred to the New York predecessor of plaintiff, the corporation which Kunett had formed to manufacture and sell SMIRNOFF vodka.

Defendant is, and since March 25, 1958, has been a corporation organized and existing under the laws of the State of Missouri, with its office and principal place of business at 5050-A Kemper Avenue, St. Louis, Missouri, in the Eastern District of Missouri, doing business under the trade name and style of The Sarnoff Company. The defendant took over the business of Quality Brands Company of Joplin, Missouri. Defendant's predecessor began the sale of vodka under the name SARNOFF in the St. Louis area in 1956.

■ The defendant raises the affirmative defense of laches. Its main contentions in support of this defense are that the defendant began using the trademark SARNOFF to designate its vodka in 1956; that plaintiff made no complaint regarding defendant's use of its trademark SARNOFF until April 1, 1959; and that, therefore, plaintiff cannot recover in this action because of its delay and its acquiescence in defendant's use of its trademark SARNOFF since plaintiff's failure to take action has led defendant into the expenditure of money which would not otherwise have been spent had the plaintiff acted promptly on its alleged rights.

Even though the defendant's explanation as to why it was unable to produce a label approval certificate for 1956 is extremely plausible and more likely than not SARNOFF vodka has been sold in the St. Louis area since 1956, the court is not constrained to find that the plaintiff is guilty of laches. John Gilbert Martin, Chairman of the Board of Heublein, Inc., first learned of the use of the name SARNOFF for vodka by the defendant in approximately 1959, and then wrote to the defendant complaining about such use. The time period which elapsed between the receipt of that letter by the defendant and the instigation of this suit by the plaintiff certainly cannot be said to comprise laches. What really seems to be the contention is the period between 1956 and 1959. However, even Eastman, a wholesale liquor dealer who had been in or connected with wholesale liquor dealers in the St. Louis area since 1940, had first heard of SARNOFF only three or four years before the trial. This is not surprising, as it is admitted that defendant has *never* advertised SARNOFF vodka. This latter fact we find to be overwhelmingly determinative of this issue, adding extreme credibility to plaintiff's evidence on this issue. There is nothing in the record to indicate that plaintiff encouraged defendant's use of SARNOFF; on the contrary, we find that plaintiff acted promptly as soon as it learned of SARNOFF vodka being on the market.

■ Defendant's asserted counterclaim is based on alleged misrepresentations of the plaintiff. It asserts that plaintiff has falsely represented to the public that its said vodka product is made according to the formula and processes used in Imperial Russia by Pierre Smirnoff. The defendant concludes that plaintiff's said product is an ordinary domestic vodka consisting of American grain neutral spirits treated in the conventional manner. It is further alleged that plaintiff, as the assignee of its alleged predecessors, has used the trademarks covered by Registration Nos. 328,-594, 330,899 and 513,428 to misrepresent the source of plaintiff's vodka sold under said trademarks.

It would be needless to review the evidence on this particular issue. Defendant's allegations in this regard are wholly unsupported by one iota of evidence. On the other side, the record herein provides a complete and unbroken chain of testimony to the effect that the equipment, process and formulation of SMIRNOFF vodka is essentially the same today as when SMIRNOFF vodka was first introduced into the United

States in the early thirties by Rudolph Kunett, and that he personally received the same from the Polish Smirnoff Company in France. The court, therefore, holds that the American SMIRNOFF vodka is produced under the formula and processes of Pierre Smirnoff as stated on the SMIRNOFF labels, and the basic equipment, formulation and process used today is essentially the same as that introduced in the United States in 1933.

The defendant further alleges that plaintiff has created in the minds of the public an understanding that vodka made and sold under the name SMIRNOFF is the same in the United States and the remainder of the world, and is made under the original formula and processes of the world-famed Pierre Smirnoff, Moscow, Russia. This twofold contention is supported by the preponderance of the evidence; however, the court cannot find that it is a false representation. The trademark of brand name SMIRNOFF is used in about seventy-five countries outside of the United States. It is either exported from the plaintiff's own plants in Hartford and California, or is made under license in a number of countries. Based on the preceding conclusion, it is obvious that defendant's twofold contention holds no persuasive value as to SMIRNOFF vodka exported from plaintiff's own plants.

Our main concern, therefore, is with plaintiff's licensees. If it is found that the SMIRNOFF vodka produced by the licensees is made by the same equipment and process and under the same formula as the American SMIRNOFF, there can be no question but that the licensee's vodka is made under the original formula and processes of the world-famed Pierre Smirnoff, Moscow, Russia. Admittedly, there are local requirements superimposed on the licensees, but the evidence shows that the equipment and process remain the same, that is, Brazil, Mexico and England. The additives required by local law, at least in those countries called in issue and on which defendant has the burden of proof, that is, England, have been shown not to affect the basic quality of the licensees' vodka product as compared to the American product. Of course, there will be minor variances, but there is very plausible testimony to the effect that the additives do not affect the quality. The court feels the odor and taste tests are much more reliable for what we are trying to ascertain than a chemical analysis. Generally, such treatment was subsequent to the process. Other than the local requirements which appear to be subsequent, plaintiff has shown that like that in the United States, SMIRNOFF in England, Brazil and Mexico is made under the original formulae.

Once again, the court concludes that plaintiff's foreign licensee's SMIRNOFF vodka is made under the same formulation and process and the same equipment is used as in the Hartford and California plants.

Plaintiff contends that the defendant has infringed its federally registered trademarks hereinbefore specified and is guilty of unfair competition. The basis of plaintiff's action rests on the Lanham Act, 15 U.S.C.A. § 1114(1) (a), which reads:

"(1) Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services; * * *." (Since amended.)

Colorable imitation is defined in 15 U.S.C.A. § 1127 as follows: "The term 'colorable imitation' includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive purchasers." (Since amended.)

Under the Lanham Act, as well as under Federal and Missouri decisions, likelihood of confusion is sufficient to

support an injunction whether or not actual confusion has already occurred. It is not necessary to show actual confusion. Abramson v. Coro, Inc., 5 Cir., 240 F.2d 854, 857; Maternally. Yours, Inc. v. Your Maternity Shop., 2 Cir., 234 F.2d 538, 542; Admiral Corp. v. Penco, Inc., 2 Cir., 203 F.2d 517, 520; La-Touraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115, 117; George W. Luft Co. v. Zande Cosmetic Co., 2 Cir., 142 F.2d 536, 538; Esso Inc. v. Standard Oil Co., 8 Cir., 98 F.2d 1, 5–6; Liggett & Myers Tobacco Co. v. Sam Reid Tobacco Co., 104 Mo. 53, 60, 15 S.W. 843, 844.

█ Here, the testimony as to confusion is very limited. The court will not rely solely on this testimony, but will consider whether or not there is existence of similarity such as would cause confusion of any appreciable number of ordinarily prudent purchasers as to the source of the goods. Between the accused mark and plaintiff's registered mark there is striking similarity not only in sound, but appearance. SMIRNOFF and SARNOFF. This fact of similarity will be so obvious to anyone who looks at these words and says them or hears them. The court finds that defendant's trademark SARNOFF for vodka is so similar to plaintiff's trademark SMIRNOFF for vodka as to amount to a colorable imitation likely to cause confusion or mistake or to deceive purchasers as to the source of the contents of bottles so labeled. It is elementary that likelihood of confusion is sufficient to support an injunction.

In addition to SARNOFF infringing the incontestable mark SMIRNOFF, defendant's labels embodying the infringing mark also infringe plaintiff's two incontestable marks, No. 328,594 (the drape design) and No. 330,899 (the crown design). Better than words can describe, an examination and comparison of the labels of these two vodkas will show that defendant has copied the color scheme, the drape design and the crown design of plaintiff's nationally advertised SMIRNOFF. Of course, there are differences, but a look at the tout ensemble will show the striking similarity, and will show beyond words that the use of these marks should be enjoined.

Although the evidence is clear and uncontradicted, the court will as a matter of record point out without needless reiteration that the evidence shows the tremendous business, advertising, good will and secondary meaning built up by plaintiff in its trademark SMIRNOFF even before the defendant came out with the accused mark. David Sherman, Sr., president and sole stockholder of the defendant company, testified that SMIRNOFF vodka was by far the biggest selling vodka in the country.

As to plaintiff's contention that defendant is responsible for having placed into the hands of others a medium for substitution, the evidence is not sufficient to show substitution of SARNOFF for SMIRNOFF in bars and taverns. There is even conflicting evidence concerning the extent to which SMIRNOFF vodka is available in bars and taverns in the St. Louis area. However, there is little evidence in the record to support a conclusion that SARNOFF vodka is not proportionately as readily available to a purchaser in a package store as SMIRNOFF vodka.

Because of colorable imitation of the aforementioned federally registered trademarks, the court concludes that plaintiff has clearly shown its right to injunctive relief. However, there is no basis in the record to grant the other relief which plaintiff seeks, namely, an accounting of profits and an award of damages.

The court will accordingly find in favor of plaintiff on defendant's counterclaim, and that the plaintiff is entitled to an injunction enjoining the defendant from using SARNOFF or any imitation of SMIRNOFF or any imitation of plaintiff's label or the color scheme and the design thereof. The plaintiff is not entitled to recover any damages.

This memorandum opinion will be adopted by the court as its findings of fact and conclusions of law, and the at-

torneys for the plaintiff will prepare the proper judgment to be entered by the court, submit same to the attorneys for defendant for approval as to form, and then to the court for entry.