**DAVID SHERMAN CORPORATION, Doing Business as the Sarnoff Company, Appellant,**

v.

**HEUBLEIN, INC., Doing Business as Ste Pierre Smirnoff, Fls, Appellee.**

No. 17582.

United States Court of Appeals Eighth Circuit.

Jan. 12, 1965.

Rehearing Denied Feb. 18, 1965.

John D. Pope, III, St. Louis, Mo., made argument for appellant and filed brief with Gary L. Newtson, St. Louis, Mo.

Harold I. Kaplan, of Blum, Moscovitz, Friedman, Blum & Kaplan, New York, N. Y., made argument for appellee and filed brief with Jos. J. Gravely, St. Louis, Mo., and Alex Friedman, Martin J. Beran and Paul R. Dohl, of Blum, Moscovitz, Friedman, Blum & Kaplan, New York, N. Y.

Before VAN OOSTERHOUT, BLACKMUN and MEHAFFY, Circuit Judges.

BLACKMUN, Circuit Judge.

Heublein, Inc., distiller and distributor of Smirnoff vodka in the United States, instituted this action, based on alleged trademark infringement and unfair competition, (a) to enjoin David Sherman Corporation from using "Sarnoff" or any imitation of Heublein's name "Smirnoff" or of its "label or the color scheme and the design thereof" and (b) for an accounting ·and damages. The district court, 223 F.Supp. 430, granted injunctive relief but denied damages; it also dismissed on the merits a counterclaim filed by the defendant. Sherman's appeal is concerned with only the injunction; Heublein has not cross-appealed.

The district court, by its judgment, determined that Heublein owned the following trademarks which were registered under § 1 and uncontestable under § 15 of the Trade-Mark Act of 1946:

No. 513,428, issued August 9, 1949, for "Smirnoff" for vodka;

No. 328,594, originally issued October 1, 1935, but renewed October 1, 1955, for a crown and drape design for vodka;

No. 330,899, originally issued December 17, 1935, but renewed December 17, 1955, for a crown design for vodka.

The court also determined that Sherman had infringed plaintiff's Smirnoff registration No. 513,428 by its use of "Sarnoff" for vodka; that it had "copied the color scheme, the drape design and the crown design" of the Smirnoff label; and that, by its own vodka labels, it had infringed Heublein's design registrations Nos. 328,594 and 330,899.

The interesting history of the origin and development of Smirnoff vodka is related in Judge Harper's opinion at pp. 431–432 of 223 F.Supp. It is not in dispute and it need not be repeated here. It suffices to say that Smirnoff is an old and established name in the vodka market; that in 1933 Rudolph Kunett, a long-time friend of the Smirnoff family, by purchase acquired the Polish Smirnoff firm's United States formulae, processes, and trademarks; and that Heublein's corporate predecessor acquired these in turn from Kunett by purchase in 1939.

The defendant, a Missouri corporation, does business as the Sarnoff Company. Its predecessor began to sell vodka under the Sarnoff name and labels in the Saint Louis area in 1956. David S. Sherman, Sr., its president and sole shareholder, had been head of a concern which distributed Smirnoff vodka in Arkansas for three or four years around 1936. It is conceded that the defendant has refused,

after demand by the plaintiff, to discontinue the use of Sarnoff for vodka.

The issues as they come to us have been narrowed. Sherman here confines its argument to asserting that the district court erred (a) in finding, p. 434 of 223 F.Supp., that the defendant's mark "SARNOFF for vodka is so similar to plaintiff's trademark SMIRNOFF for vodka as to amount to a colorable imitation likely to cause confusion or mistake or to deceive purchasers as to the source of the contents of bottles so labeled", and in holding that the defendant's labels infringe Heublein's drape and crown designs and incontestable marks, and (b) in finding that Sherman copied the color scheme and designs of the Smirnoff label. The appeal thus rests primarily on the trade-mark infringement aspect of the case.

When the complaint was filed on September 22, 1960, § 32 of the 1946 Act, 15 U.S.C. § 1114, provided:

"(1) Any person who shall, in commerce, (a) use, without the consent of the registrant, any reproduction, counterfeit, copy, or colorable imitation of any registered mark in connection with the sale, offering for sale, or advertising of any goods or services on or in connection with which such use is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods or services * * * shall be liable to a civil action by the regis-

trant for any or all of the remedies hereinafter provided * * *." [1]

Section 45, 15 U.S.C. § 1127, then read in part as follows:

"The term 'colorable imitation' includes any mark which so resembles a registered mark as to be likely to cause confusion or mistake or to deceive purchasers." [2]

This court in prior opinions has enunciated the well known principles generally applicable in this area of trademark law:

1. The standard, as the language of the statute indicates, is likelihood of confusion and deceit of actual or prospective purchasers. Cleo Syrup Corp. v. Coca-Cola Co., 139 F.2d 416, 418, 150 A.L.R. 1056 (8 Cir.1943), cert. denied 321 U.S. 781, 64 S.Ct. 638, 88 L.Ed. 1074; Dietene Co. v. Dietrim Co., 225 F.2d 239, 243 (8 Cir.1955).

2. It is not necessary to show actual deceit. "It is sufficient to show that such deception will be the natural and probable result of the defendant's acts". Queen Mfg. Co. v. Isaac Ginsberg & Bros., 25 F.2d 284, 288 (8 Cir.1928); Esso, Inc. v. Standard Oil Co., 98 F.2d 1, 5–6 (8 Cir.1938); United Drug Co. v. Obear-Nester Glass Co., 111 F.2d 997, 1000 (8 Cir.1940), cert. denied 311 U.S. 665, 61 S.Ct. 22, 85 L.Ed. 427.

3. The purchaser contemplated is the ordinary one who uses ordinary caution "buying under the usual conditions prevailing in the trade, and giving

---

1. This portion of the statute was amended on October 9, 1962, by Pub.L. 87–772, § 17, 76 Stat. 773, to read:
 "(1) Any person who shall, without the consent of the registrant—
 "(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; * * *
 shall be liable in a civil action by the registrant for the remedies hereinafter provided. * * *"

2. This definition was amended by § 21 of the 1962 Act, 76 Stat. 774, to eliminate the final word "purchasers". We find nothing of significance, for purposes of the present case, in this change. At the time of the amendment it was observed that "the provision actually relates to potential purchasers as well as to actual purchasers. The word 'purchasers' is eliminated so as to avoid the possibility of misconstruction of the present language of the statute." S.R. No. 2107, U.S.Code Cong. & Adm.News, 87th Cong., 2d Sess. (1962), pp. 2844, 2847.

such attention as such purchasers usually give in buying that class of goods", Queen Mfg. Co. v. Isaac Ginsberg & Bros., supra, p. 287 of 25 F.2d; Seven Up Co. v. Cheer Up Sales Co., 148 F.2d 909, 911 (8 Cir.1945), cert. denied 326 U.S. 727, 66 S.Ct. 32, 90 L.Ed. 431, or, as has been said otherwise, "an ordinarily prudent purchaser". United Drug Co. v. Obear-Nester Glass Co., supra, p. 999 of 111 F.2d; S. S. Kresge Co., v. Winget Kickernick Co., 96 F.2d 978, 987 (8 Cir. 1938), cert. denied 308 U.S. 557, 60 S.Ct. 79, 84 L.Ed 468; F. W. Fitch Co. v. Camille, Inc., 106 F.2d 635, 639 (8 Cir. 1939).

■ 4. Each case stands upon its own peculiar facts. Dietene Co. v. Dietrim Co., supra, p. 243 of 225 F.2d.

■ 5. Whether the similarity deceives or is likely to deceive is a question of fact. Cleo Syrup Corp. v. Coca-Cola Co., supra, p. 417 of 139 F.2d; Seven Up Co. v. Cheer Up Sales Co., supra, p. 911 of 148 F.2d; Star Bedding Co. v. Englander Co., 239 F.2d 537, 543 (8 Cir.1957); Neely v. Boland Mfg. Co., 274 F.2d 195, 201 (8 Cir.1960).

■ 6. "[S]imilarity of sound, as well as appearance, of the words or letters may constitute infringement". Esso, Inc. v. Standard Oil Co., supra, p. 5 of 98 F.2d. To the same effect are LaTouraine Coffee Co. v. Lorraine Coffee Co., 157 F. 2d 115, 117 (2 Cir.1946), cert. denied 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663; Abramson v. Coro, Inc., 240 F.2d 854, 857 (5 Cir.1957); and Sterling Drug, Inc. v. Lincoln Laboratories, 322 F.2d 968, 971 (7 Cir.1963).

■ 7. Some dissimilarity in form and color is not conclusive against infringement. Infringement may exist "where the substantial and distinctive part of the trademark is copied or imitated". Queen Mfg. Co. v. Isaac Ginsberg & Bros., supra, p. 287 of 25 F.2d; Reid, Murdoch & Co. v. H. P. Coffee Co., 48 F.2d 817, 819 (8 Cir.1931), cert. denied 284 U.S. 621, 52 S.Ct. 9, 76 L.Ed. 529.

■■ 8. The plaintiff has the burden of proof. Checker Food Prod. Co. v. Ralston Purina Co., 232 F.2d 477, 481 (8 Cir.1956). That burden may be sustained by proving actual deceit of purchasers or the likelihood of their deceit. Cleo Syrup Corp. v. Coca-Cola Co., supra, p. 418 of 139 F.2d.

Sherman would avoid the application of these general rules here by arguing that the likelihood-of-confusion test, while perhaps properly and sensibly applicable where there has been no opportunity to determine whether confusion will actually occur, is subordinate to the actual experience of the market place; that the fact that no deception or confusion has been effected after a lapse of substantial time is strongly probative; that not a single instance of confusion was proved by Heublein, even though it employed teams of paid investigators in the Saint Louis market; that the respective products of the plaintiff and the defendant were sold side by side in that market for six years without confusion; that there is no evidence of copying; and that the color scheme and designs are conventional ones present on many vodka labels.

We recognize that the courts have regarded the absence of actual confusion as an important factor. Indeed, on occasion they have gone so far as to say that the best test of proving likelihood of deception is actual deception itself. Lapointe Machine Tool Co. v. J. N. Lapointe Co., 115 Me. 472, 99 A. 348, 354 (1916); Plough, Inc. v. Kreis Laboratories, 314 F.2d 635, 639–640 (9 Cir.1963); Mishawaka Rubber & Woolen Mfg. Co. v. Panther-Panco Rubber Co., 153 F.2d 662, 665 (1 Cir.1946), cert. denied 329 U.S. 722, 67 S.Ct. 64, 91 L.Ed. 625; Societe Anonyme, etc. v. Julius Wile Sons, 161 F.Supp. 545, 548 (S.D.N.Y.1958); Eastern Wine Corp. v. Winslow-Warren, Ltd., 137 F.2d 955, 960 (2 Cir.1943), cert. denied 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452. This court itself has said, in Maas & Waldstein Co. v. American Paint Corp., 288 F.2d 306, 307 (8 Cir.1961);

"It is significant, though not controlling, that during the years the

two trade-marks have been used in the same territory by their respective owners, no instances of deceit or confusion in respect to them has been shown * * *."

And in Star Bedding Co. v. Englander Co., supra, p. 543 of 239 F.2d, we indicated that absence of evidence of confusion was supportive of a trial court's finding that there was no likelihood of confusion.

We do not ignore the experience of the market place. But none of the cases which we have cited or which have been cited to us, as we read them, abandons likelihood of confusion as the governing test or goes so far as to hold that likelihood of confusion is not the applicable criterion even when there has been simultaneous sale for a period of time without a proved example of actual confusion. The courts have given full impetus to the statutory standard. They have recognized that it is usually difficult to ferret out instances of actual confusion even though they exist. And they have not accepted mere passage of time as a factor which avoids or which renders inapplicable the stated statutory standard. See, for example, Ste. Pierre Smirnoff, Fls. v. Hirsch, 109 F.Supp. 10, 12, 13 (S.D.Cal.1952); United Drug Co. v. Obear-Nester Glass Co., supra, 111 F.2d 997; Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., 281 F.2d 755, 761 (2 Cir.1960); Miles Shoes, Inc. v. R. H. Macy & Co., 199 F.2d 602, 603 (2 Cir. 1952), cert. denied 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345; Westgate-Sun Harbor Co. v. Watson, 92 U.S.App.D.C. 341, 206 F.2d 458, 462 (1953); Independent Nail & Packing Co. v. Stronghold Screw Products, 205 F.2d 921, 927 (7 Cir.1953), cert. denied 346 U.S. 886, 74 S.Ct. 138, 98 L.Ed. 391.

In the light of all this, we have no difficulty in concluding that the evidence most adequately supports the trial court's findings that Sherman's use of Sarnoff for vodka qualified as a liability-engendering colorable imitation of the incontestable mark Smirnoff, within the meaning of the cited and quoted sections of the Trade-Mark Act. The names Smirnoff and Sarnoff are identical in their first and five final letters and differ only in the "a" as contrasted with the "mi". They are, as the trial court noted, strikingly alike when spoken. The respective marks employing these names are similar and each is set in an upright curve. The product for which each is used is identical. Each is purchased and used by the same class of persons. Each is available on retailers' shelves in the Saint Louis area.

Certain other facts lend additional tone and background: David S. Sherman, Sr. had earlier connection with an Arkansas firm distributing Smirnoff vodka. Smirnoff has possessed continuous preeminence in the national market as the largest selling vodka in the United States and as the fifth or sixth largest selling brand of distilled spirits. Its business grew from almost nothing, around 1934, to over 1,972,000 cases and over $72,500,000 in sales for the fiscal year ending June 30, 1962. The plaintiff expended in excess of $26,000,000 in national advertising for Smirnoff vodka for the 10-year period ending in 1962 and realized gross sales for that decade of over $500,000,000. Smirnoff is sold wherever liquor may legally be dispensed in this country, including Missouri and the City of Saint Louis. Mr. Sherman himself knew this and even testified on direct examination, "I think there's been enough evidence shown here that there is practically two vodkas sold in large quantities, and that's Smirnoff and all the rest". He conceded that no one with the name Sarnoff was connected with the defendant. He stated that that name was selected because it was "a very prominent name in the United States" and was "synonymous" with vodka and Russia. There was no advertising of Sarnoff vodka. And Sherman distributes vodka under other names not similar to Smirnoff.

The following cases, by no means constituting a complete list, provide examples of comparable similarities between registered and offending marks where-

relief has been granted to the registered owner: Cleo Syrup Corp. v. Coca-Cola Co., supra, 139 F.2d 416 (soft drinks; Cleo Cola, as violative of Coca-Cola); Dietene Co. v. Dietrim Co., supra, 225 F.2d 239 (food supplements; Dietrim as violative of Dietene); Esso, Inc. v. Standard Oil Co., supra, 98 F.2d 1 (petroleum products; Esso as violative of S O and Standard Oil); LaTouraine Coffee Co. v. Lorraine Coffee Co., supra, 157 F.2d 115 (coffee; Lorraine as violative of LaTouraine); United Drug Co. v. Obear-Nester Glass Co., supra, 111 F.2d 997 (prescription bottles; The Rexall Store as violative of Rex); Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc., supra, 281 F.2d 755 (2 Cir.1960), (men's hair dressing; Valcream as violative of Brylcreem); Miles Shoes, Inc. v. R. H. Macy & Co., supra, 199 F.2d 602 (shoes and hosiery; Gropals as violative of Groshoe); Parke, Davis & Co. v. G. F. Harvey Co., 141 F.2d 132, 31 CCPA 879 (1944), (digitalis preparations; Digiseals as violative of Kapseals Digifortis); Suzuki & Co. of New York v. Maggi Co., 117 F.2d 562, 28 CCPA 928 (1941) (seasoning; aji as violative of Maggi).

There are, in particular, a number of liquor cases: Brown-Forman Distillery Co. v. Arthur M. Bloch Liquor Importers, 99 F.2d 708 (7 Cir.1938), (bourbon whiskey; Old Foster as violative of Old Forrester); A. Smith Bowman Distillery, Inc. v. Schenley Distillers, Inc., 198 F. Supp. 822 (D.Del.1961), (bourbon whiskey; Indiana Gentleman and American Gentlemen as violative of Virginia Gentleman); A. Bauer & Co. v. La Societe Anonyme, 120 F. 74 (7 Cir.1903), (liqueur; St. Benedict as violative of Benedictine); Dubonnet Wine Corp. v. Atlas Import & Export Corp., 51 F.Supp. 73 (S.D.N.Y.1943), (wines; Debonair as violative of Dubonnet).

 It has been said that where products are "virtually identical", as with alcoholic beverages, "the degree of similarity in the marks necessary to support a finding of infringement is less than in the case of dissimilar, noncompeting products". A. Smith Bowman Distillery, Inc. v. Schenley Distillers, Inc., supra, pp. 826, 827–828 of 198 F.Supp.

Amazingly close, naturally enough, to the present case is the same plaintiff's immediate predecessor's comparable litigation in 1952 with respect to a vodka marketed under the name "Smarkoff". Ste. Pierre Smirnoff, Fls. v. Hirsch, supra. The district court there held that the competing name was so similar as to amount to colorable imitation in violation of the Act and that, although the plaintiff had proved "very little actual confusion", nevertheless the "setting is such that unless restrained, defendants will continue a course of conduct reasonably certain to bring about the confusion in customer minds which equity will seek to inhibit by injunction". Pp. 12 and 13 of 109 F. Supp. And in Heublein, Inc. v. Destileria Serralles, Inc., 124 USPQ 111, 112 (1960), where the present plaintiff successfully opposed a registration application for vodka, the Patent Office Trademark Trial and Appeal Board said:

> "Since the goods in connection with which the parties use their marks are identical in kind, the only issue is whether 'SERRANOV' so resembles 'SMIRNOFF' as to be likely to cause confusion or mistake or deception of purchasers.

> "(1) 'SERRANOV' and 'SMIRNOFF' are substantially similar in sound. It is well known that liquor is ordered by the spoken word. Under the circumstances, there is a distinct likelihood of confusion or mistake or deception of purchasers."

We find nothing in the cases cited by Sherman which is contrary to the conclusions we reach. These include Seven Up Co. v. Cheer Up Sales Co., supra, 148 F.2d 909; Star Bedding Co. v. Englander Co., supra, 239 F.2d 537; Maas & Waldstein Co. v. American Paint Corp., supra, 288 F.2d 306; Societe Anonyme, etc. v. Julius Wile Sons, supra, 161 F.Supp. 545. The dissimilarities of their facts are apparent. Further, the trial courts had made findings of non-infringement; the appellate standard therefore was whether this finding was clearly erroneous.

Although no direct evidence of actual copying is in the record, the same result follows with respect to the labels. The obvious similarity and the other facts we have mentioned in connection with the names make possible and appropriate an inference of copying and support the finding that copying was present. As Judge Harper observed, p. 434 of 223 F.Supp.:

"[A]n examination and comparison of the labels of these two vodkas will show that defendant has copied the color scheme, the drape design and the crown design of plaintiff's nationally advertised SMIRNOFF. Of course, there are differences, but a look at the tout ensemble will show the striking similarity * * *."

We need not encumber this opinion with reproductions of the respective labels. Red and gold and a touch of black, a top central crown, and the crown's dominating and accompanying red and gold drape outlining the label's inner contents and rendering it distinctive as a whole, are present in both the registered and the accused 80 proof labels. The possible existence in the market of other vodka labels with red in predominance and draped standards does not relegate the plaintiff's label to a posture of embracing nothing more than the conventional and, accordingly, reduce the area of trademark infringement. Such other labels do no more than emphasize the Russian background of the product and do not transform crown and drape designs into something incapable of appropriate trademark registration, validity and protection, and certainly do not effectuate non-liability for this defendant. See American Chicle Co. v. Topps Chewing Gum, Inc., 208 F. 2d 560 (2 Cir.1953); G. Heileman Brewing Co. v. Independent Brewing Co., 191 F. 489 (9 Cir.1911); Matzger v. Vinikow, 17 F.2d 581 (9 Cir.1927).

In Feil v. American Serum Co., 16 F. 2d 88, 90 (8 Cir.1926), Judge Walter H. Sanborn, in speaking for this court, said:

"It is incredible that the defendant would ever have conceived or used 'Worm-X,' if it had not previously seen 'Wormix,' and known that the complainant was using it to identify and sell his product."

That observation appears to us to be equally applicable here.

Affirmed.