SOCIETE ANONYME DE LA GRANDE
DISTILLERIE E. CUSENIER FILS
AINE & CIE., and Browne Vintners Co.,
Inc., Plaintiffs,

v.

JULIUS WILE SONS & CO., Inc.,
Defendant.

United States District Court
S. D. New York.

May 7, 1958.

546

Mock & Blum, New York City, for plaintiffs, Alex Friedman, New York City, of counsel.

Levisohn, Niner & Cohen, New York City, for defendant, Edwin Levisohn, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

The complaint in this action seeks injunctive relief and damages for trademark infringement and unfair competition. At the trial the cause of action based on unfair competition was withdrawn and the remaining issue relating to trademark infringement was tried on a stipulated set of facts.

The plaintiff, Societe Anonyme De La Grande Distillerie E. Cusenier Fils Aine & Cie., a French corporation engaged in the manufacture of liqueurs, is the owner of the trademark "Freezomint" which it has used to identify its creme de menthe cordial. Said mark was registered in the United States Patent Office on April 10, 1934 and was duly renewed on April 10, 1954. It has been used by the French plaintiff to identify its product in the United States since 1920. Figures produced at trial show that the importation and sale of "Freezomint" in the United States if not substantial have been consistent over the years. Modest sums have also been expended for advertising from time to time and it would seem that the mark has achieved a respectable amount of good will.

Browne Vintners Co., Inc., the sole and exclusive American distributor of "Freezomint" has also joined in this action as a plaintiff.

The defendant is a domestic distributor of liqueurs, whiskeys, wines and other alcoholic beverages and has since 1885 been continuously the exclusive distributor in the United States of all such products produced by P. Garnier of Paris, France, and sold in the United States. In addition defendant is the licensed producer in America of certain domestically made Garnier products which are produced in accordance with the original French formulae. These alcoholic beverages of domestic origin include a line of creme de menthe cordials, one of which bears the mark "Frappemint". It is plaintiffs' contention that the designation "Frappemint" which has been used by the defendant since 1952 in-

fringes their rights in the trademark "Freezomint".

The defendant in its answer denies infringement and pleads as a separate defense that the trademark "Freezomint" is descriptive as applied to creme de menthe, is in the public domain and is not the subject of exclusive appropriation.

■ A determination on the issue of infringement may be dispositive of the immediate controversy without regard to the basic validity of the "Freezomint" trademark. If no infringement be in fact shown the issue raised by the separate defense becomes academic and to determine the validity of the trademark "Freezomint" if not infringed is to decide a hypothetical question. Cf. Altvater v. Freeman, 1943, 319 U.S. 359, 363, 63 S.Ct. 1115, 87 L.Ed. 1450. I proceed then to the question of infringement.

■ The touchstone of infringement is a similarity "likely to cause confusion or mistake or to deceive purchasers." 60 Stat. 437 (1946) 15 U.S.C.A. § 1114(1) (a). It is not similarity itself which provides the basic test but whether such similarities as may appear from a comparison of the two marks will provoke confusion among the buying public. This determination that I am called upon to make—whether confusion is or is not likely to arise—does not readily lend itself to resolution by scientific appraisement or comparison. Rather, a finding on infringement is by necessity a subjective determination by the trial judge based on his visceral reactions as to the likelihood of confusion the allegedly infringing mark will create in the minds of the public. As noted by one court, in situations of this kind the Judge "can only contemplate, speculate, and weigh the probabilities of deception arising from the similarities." Colburn v. Puritan Mills, Inc., 7 Cir., 1939, 108 F.2d 377, 378.

■ Each of the two marks now before the court, "Freezomint" and "Frappemint" must, of course, be considered as an entire unit. The ordinary buyer does not stop to dissect the marks and analyze their component parts; if he is deceived it is attributable to the mark as a totality and not normally to any particular part of it. Syncromatic Corp. v. Eureka Williams Corp., 7 Cir., 174 F.2d 649, 650, certiorari denied, 1949, 338 U.S. 829, 70 S.Ct. 79, 94 L.Ed. 504. But in determining the likelihood of confusion, similarity of the marks in appearance, sound, spelling and suggestion as well as the manner in which the marks are used and the degree of care likely to be exercised by prospective purchasers are all elements to be considered. Maternally Yours, Inc., v. Your Maternity Shop, Inc., 2 Cir., 1956, 234 F.2d 538, 543; Grove Laboratories, Inc., v. Approved Pharmaceutical Corp., D.C.N.D. N.Y.1957, 149 F.Supp. 86, 90. In applying these standards of comparison it is well to note that while the marks are to be viewed as a whole, where part of the mark has little or no trade significance it is accorded less weight than the more arbitrary portions of the mark. Burton-Dixie Corp. v. Restonic Corp., 1956, 234 F.2d 668, 43 C.C.P.A., Patents, 950; Magnaflux Corp. v. Sonoflux Corp., 1956, 231 F.2d 669, 43 C.C.P.A., Patents, 868. In the instant case the term "mint" which is common to both marks, is concededly descriptive and common to the trade and even when joined with a more fanciful prefix is not likely to provide the source of confusion.

■ As to a comparison of the distinctive portions of each mark, to wit, Freezo and Frappe, they seem to be sufficiently dissimilar in sound, appearance and spelling to avoid consumer confusion. To be sure they both have the same number of letters and both commence with the letters "Fr" but I don't think these points of similarity warrant a finding that they are likely to be confused by the consumer, particularly when the likelihood of confusion is considered in the light of the buying habits of prospective purchasers of creme de menthe. As distinguished from mass produced low priced articles, the selection and purchase of a creme de menthe cordial gen-

548

erally involves an exercise of personal taste and purchasers of such liqueurs are apt to buy with a greater degree of sophistication and care than might be true in their purchase of other merchandise. Such a consideration is always relevant in appraising the likelihood of confusion. See LaTouraine Coffee Co. v. Lorraine Coffee Co., 2 Cir., 157 F.2d 115, 124 (dissenting opinion), certiorari denied 1946, 329 U.S. 771, 67 S.Ct. 189, 91 L.Ed. 663; Restatement, Torts § 729(d); comment g (1938); 3 Callmark, Unfair Competition and Trademarks § 81.2(a) (2 ed. 1950).

■ Also relevant in a consideration of this issue is the intent of defendant. Where a defendant adopts his designation with the intent of capitalizing on the reputation and good will of plaintiff's trademark such an intent may justify the inference that there is confusing similarity. Maternally Yours, Inc., v. Your Maternity Shop, Inc., 2 Cir., 1956, 234 F.2d 538, 543; Eastern Wine Corp. v. Winslow-Warren Ltd., 2 Cir., 137 F.2d 955, 960, certiorari denied 1943, 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452; Restatement, Torts § 729 b, comment f (1938). But such an intent has not been shown in this case. Indeed, it is completely absent. The defendant has used designations ("Rose Mint"–"Stingermint") similar in sound and construction to the one in issue to identify other creme de menthe cordials it has placed on the market and it seems to have constructed the word "Frappemint" in pursuance of this basic marketing pattern rather than out of a desire to divert prospective trade from plaintiffs' product.[1]

■ That the likelihood of confusion between the two competing tradenames is non-existent finds further support from the fact that no instances of confusion have occurred in the past. While I recognize that evidence of actual confusion is not essential to sustain the instant action the fact that during the period of over six years in which "Frappemint" has been on the market no one appears to have been actually deceived is strongly probative that there is no likelihood of deception or confusion. See Mishawaka Rubber & Woolen Mfg. Co. v. Panther-Panco Rubber Co., 1 Cir., 153 F.2d 662, 665, certiorari denied 1946, 329 U.S. 722, 67 S.Ct. 64, 91 L.Ed. 625; Eastern Wine Corp. v. Winslow-Warren Ltd., 2 Cir., 137 F.2d 955, 959–960, certiorari denied 1943, 320 U.S. 758, 64 S.Ct. 65, 88 L.Ed. 452. Nor can the plaintiffs seriously contend that the entry of "Frappemint" upon the American market materially affected their own sales. On the contrary, the plaintiffs realized their greatest sales in the very year in which "Frappemint" made its advent.

■ Though precedents are not particularly helpful in this area it is of interest to note that the designation "Clor-Aids" was held not to infringe "Clorets" and the word "Syrocol" not to infringe "Cheracol". American Chicle Co. v. Topps Chewing Gum, 2 Cir., 1954, 210 F.2d 680; Upjohn Co. v. Schwartz, 2 Cir., 1957, 246 F.2d 254. The two marks in the instant case cannot be said to possess greater similarities than those discussed in the cases above where infringement was found lacking.

Judgment for the defendant dismissing the complaint.

1. That the use of the name "Frappemint" does not evidence an intent to infringe finds further support in the fact that similarly constructed marks such as "Co-comint", "Iceberg Mint", "Veramint" and "Invictamint" have long been employed by the trade.