**UNIROYAL, INC., Plaintiff,**

v.

**KINNEY SHOE CORPORATION and F. W. Woolworth Co., Inc., Defendants.**

**No. 78 Civ. 2095 (KTD).**

United States District Court, S. D. New York.

July 24, 1978.

As Amended July 27, 1978.

---

Arthur, Dry & Kalish, P. C., New York City, for plaintiff by Harvey E. Bumgardner, Jr., Philip L. Rodman, Jeffrey M. Greenman, New York City, of counsel.

Kenyon, Kenyon, Reilly, Carr & Chapin, New York City, for defendants by William T. Boland, Jr., Charles R. Brainard, New York City, of counsel.

Armstrong & Bray, New York City, for defendants by John K. Armstrong, Timothy W. Ulrich, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This is an action for injunctive relief and damages for trademark infringement, un-

fair competition and trademark dilution. At a hearing held on July 13, 1978, on defendants' motion, brought on by order to show cause, to enjoin plaintiff from proceeding with an action commenced in the Korean courts concerning the trademark here in issue, the parties agreed [1] to an immediate bench trial of plaintiff's trademark infringement claim (Count I of the Complaint), leaving for resolution at a later date the issues presented by the unfair competition and dilution claims,[2] as well as by the various counterclaims asserted, and any issue concerning damages. An expedited trial on Count I was held on July 14, 1978, at the close of which defendants moved to dismiss this trademark infringement count. On July 20, 1978, after considering the parties post-trial submissions, I entered an order granting that motion and indicating that detailed findings of fact and conclusions of law will follow in seven days. This opinion constitutes my findings of fact and conclusions of law pursuant to Rule 52(a), F.R.Civ.P.

Plaintiff is a corporate marketer of consumer products, including various types of shoes. In 1916 it adopted and began to use the trademark "Keds" to identify certain of its footwear for men, women and children. The "Keds" mark was registered in the United State Patent Office on January 2, 1917 and November 17, 1970.

Defendant Kinney Shoe Corporation ("Kinney"), a wholly owned subsidiary of defendant F. W. Woolworth Co., Inc. is a nationwide retailer of shoes for men, women and children whose trademark logo "Kinney", used since 1894 and registered in the United States Patent Office since 1894, has become well known. In 1976 for use in connection with a line of its children's shoes, Kinney adopted the mark "Kinney KiDS" with an "r" superscript following the word "Kinney" and a "tm" superscript after the word "KiDS", which is also a logo. The term "Kinney KiDS" is used in various forms, that is, sometimes "Kinney" appears before "KiDS" and oftentimes above "KiDS". However, the words in logo always appear together. Kinney uses the mark "Kinney KiDS" not only with respect to its children's canvas shoes, which compete through sale on the retail level with plaintiff's "Keds" brand canvas shoes for children, but also with regard to other types of children's shoes and accessories, including dress shoes, sandals, house slippers, leather shoes, socks, tote bags and knapsacks. These products are sold only in Kinney shoe stores, which number approximately 1,250 and are located throughout the United States, Puerto Rico, the Virgin Islands and Canada. Displays of the "Kinney KiDS" shoes in Kinney shoe stores are set up according to a plan illustrated in Kinney Visual Merchandising Quarterly magazines, which are sent on a seasonal basis to the shoe stores and contain separate sections on the manner of developing men's, women's and children's shoes. Advertising and promotion of "Kinney KiDS" shoes emphasize that they are for children.

While Kinney's mark thus is used to identify children's products, plaintiff's "Keds" canvas shoes are made for adults as well. Sales of "Keds" shoes are substantial; some 5,000,000 pairs were sold to men, women or children in the United States alone in 1977. Advertising of "Keds" shoes is not directed to the children's market alone; however, that which is refers to children as kids. In this connection, I note that several years

1. Indeed, plaintiff's post-trial brief indicates that plaintiff "reserved its objection to piecemeal litigation without discovery on related issues, but was otherwise delighted to have an early trial of the primary issues by this court." Plaintiff's Post-Trial Brief, p. 2–3.

2. The parties agreed to try the "confusion issue" of Count III (the trademark dilution claim asserted under section 368–d of the General Business Law of the State of New York) at the trial and the defendants also moved to dismiss that Count at the close of the evidence. I am not ruling on that motion at this point. It may be that a motion for summary judgment may lie in the future on that Count when discovery is complete and the parties have ample time to consider and brief the issue.

ago "Keds" shoes were sold at Kinney shoe stores under the promotional slogan "Kinney's got Keds." With this factual background in place, I turn to a consideration of the legal issues presented, during which the relevance of other facts adduced at the trial will become apparent.

■ Before the issue of infringement can be resolved, it is ordinarily necessary to determine the validity of the trademark sought to be protected in the first instance. Defendant Kinney's answer raises an issue as to whether plaintiff's trademark "Keds" is a valid one since it alleges that "Keds" has become a generic term. However, if no infringement is shown, a determination of Kinney's contention in this regard is unnecessary. *Societe Anonyme v. Julius Wile Sons & Co.,* 161 F.Supp. 545, 547 (S.D.N.Y. 1958) (Kaufman, J.). Consequently, the validity of the "Keds" mark will be assumed for the purposes of this opinion.

■ The essence of liability for trademark infringement, as contained in 15 U.S.C. § 1114(1)(a) is similarity "likely to cause confusion, or to cause mistake or to deceive" the consuming public. *Safeway Stores, Inc. v. Safeway Properties, Inc.,* 307 F.2d 495, 497 (2d Cir. 1962); *Maternally Yours v. Your Maternity Shop,* 234 F.2d 538, 542 (2d Cir. 1956). Whether such similarity exists on a given set of facts must be of necessity a subjective judicial determination; however, in cases concerning different and non-competitive products, a weighing of relevant conflicting considerations aids this determination. *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 432, 435 (2d Cir. 1961). This balancing test has been extended to cases, such as here, involving competitive products since the susceptibility to confusion in such cases would appear greater. *See Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.,* 411 F.2d 1097, 1100 (2d Cir. 1969). Consequently, such criteria as the following will be considered in resolving the existence or absence of probable consumer confusion: strength of the mark;

degree of similarity between the marks in appearance, sound, spelling and suggestion; the manner in which the marks are used, actual confusion, degree of care likely to be exercised by purchases, sophistication of the buyers, quality of the products and the defendant's intent or good faith in adopting its designation. *Polaroid Corp. v. Polarad Electronics Corp., supra; Maternally Yours, Inc. v. Your Maternity Shop, Inc., supra,* 234 F.2d at 543; *National Automobile Club v. National Auto Club, Inc.,* 365 F.Supp. 879, 882 (S.D.N.Y.1973), *aff'd* 502 F.2d 1162 (2d Cir. 1974); *Societe Anonyme v. Julius Wile Sons & Co., supra,* 161 F.Supp. at 547. While in applying these criteria, the marks must ordinarily be considered as a unit, where part of the mark is descriptive or of no trade significance it will be accorded less weight than the more unique portion. *Societe Anonyme v. Julius Wile Sons & Co., supra.*

■ It is apparent that "Keds" is a strong mark, since it is a fanciful term having no common meaning. *See Sears, Roebuck and Co. v. Allstate Driving School, Inc.,* 301 F.Supp. 4 (S.D.N.Y.1969). While "Keds" is similar to "KiDS" in sound and spelling, it is sufficiently dissimilar to "Kinney KiDS". It is clear that "KiDS" is common and descriptive term not susceptible of protection in and of itself and, as plaintiff points out, of trade significance only insofar as it describes a children's market. Because of this and because the word "KiDS" is never used by Kinney without the word "Kinney" in close proximity, it is clear that Kinney's mark in issue is in fact "Kinney KiDS" and not simply "KiDS" as plaintiff urges. That "Kinney KiDS" is a composite mark with the separate superscripts merely designating the registered status of one element of the composition is an inescapable conclusion. While defendant's view of its mark is not weighty, it is of note that Kinney, in applying for registration relating to this mark, designated the same as "Kinney KiDS" and not simply "KiDS".

With regard to the respective configurations or logos of the two marks, there is

dissimilarity. "Keds" is in filled block letters on a straight line. Aside from the fact that the word "Kinney" in logo precedes "KiDS", the term "KiDS" contains an offset "i", the letters are placed as to form a curve and are frequently in outlined or colored letters. Kinney's description of its logo as "playful" is apt.

It is clear that both parties use their marks competitively insofar as children's canvas shoes are concerned. The only evidence that has been adduced as to the relative quality of "Keds" and "Kinney KiDS" shoes is that both are manufactured in the same factory in Korea. Thus, I am left to presume that Kinney's product is not inferior compared to plaintiff's. No evidence was presented to indicate that there has been actual confusion in the marketplace with respect to the products. As far as the sophistication of the buyer is concerned, testimony was adduced that the mother, and not the child, is the relevant consumer, and a perusal of the promotional material proffered by the parties leads me to conclude that an ordinarily prudent mother is not likely to be persuaded that defendant is connected in any way with plaintiff, both because "Kinney KiDS" shoes are clearly identified as Kinney-sourced, and the tone and impact of the Kinney sales pitch is light and playful while plaintiff's is of a more serious nature.

Plaintiff has adduced nothing to indicate that Kinney's adoption of its mark was in bad faith. Kinney's Senior Vice President testified that "Kinney KiDS" mark was adopted because "Kids and Kinney go together" (Transcript, p. 134) and that the mark was cleared with outside trademark counsel. This would indicate a lack of bad faith on the part of Kinney. Moreover, evidence of other composite registered trademarks with the term "Kid" or "Kids" as one element has been proffered. Plaintiff's sales manager of its Footwear Division, testified that he knew of "Kid Power" shoes which have been on the market for four or five years and "Whiz Kid" shoes, both of which are registered trademarks. Additionally, canvas children's shoes are currently being sold under the mark "Kid Trax" which plaintiff's sales manager recognized as sold by K Mart Stores, the leading shoe seller in the country. This current use in the market of composite "Kid" names known to plaintiff would appear to evidence a lack of intent to infringe on Kinney's part. *See Societe Anonyme v. Julius Wile Sons & Co., supra,* 161 F.Supp. at 548 n. 1.

Weighing all the above considerations, I must conclude that plaintiff's claim of similarity of Kinney's mark which would tend to confuse the consuming public as to the source of origin is lacking in merit and consequently Count I, charging trademark infringement, must fail.

Accordingly, defendants' motion to dismiss Count I is granted, the motion to dismiss Count III is denied without prejudice to its renewal at a later date.[3]

Final judgment on this order shall be entered immediately, there being no just reason for delay. Rule 54(b), F.R.Civ.P.

IT IS SO ORDERED.