**CLARKS OF ENGLAND, INC. and Clarks Overseas Shoes Limited, Plaintiffs-Counterdefendants,**

**v.**

**GLEN SHOE COMPANY, INC., Defendant-Counterplaintiff,**

**Paramount Pictures Corporation, Additional Plaintiff on the Counterclaims.**

80 Civ. 268 (RWS).

United States District Court, S. D. New York.

Feb. 8, 1980.

As Amended Feb. 11, 1980.

St. Onge, Steward, Johnston, Reens & Noe, Stamford, Conn., for Clarks of England, Inc., and Clarks Overseas Shoes Limited by Ronald J. St. Onge, Stamford, Conn.

Amster, Rothstein & Engelberg, New York City, for Paramount Pictures Corp., and Glen Shoe Co., Inc. by Jesse Rothstein, Anthony F. LoCicero, New York City.

## OPINION

SWEET, District Judge.

Plaintiff Clarks of England, Inc. and Clarks Overseas Shoes Limited ("Clarks") have filed this action alleging trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114(a), false designation of origin under Section 43 of the Lanham Act, 15 U.S.C. § 1125, and for common law trademark infringement and unfair competition against Glen Shoe Company, Inc. ("Glen"). Glen has filed a counterclaim for bad faith commencement of this lawsuit, on which Paramount Pictures Corporation ("Paramount") is co-plaintiff. Clarks has moved for a preliminary injunction against trademark infringement or unfair competition by Glen. Glen and Paramount have cross-moved for a preliminary injunction against assertions that Glen's activities violate Clarks' trademarks. On February 5, 1980, this court held a hearing on these motions at which testimony of the president of Clarks was presented and affidavits, dep-

ositions and exhibits were submitted. This opinion shall constitute findings of fact and conclusions of law as required by Rule 52, Fed.R.Civ.P. For the reasons set forth below, both motions are denied.

Clarks is the owner of the trademark "TREK" for footwear under Registration No. 959,469, granted by the United States Patent and Trademark Office on May 22, 1973. Clarks produces leisure and hiking shoes for men and women which it sells under the trademark TREK, and also under a series of related, but unregistered marks, including PLAY TREK, SUN TREK, TREK MOCS, TREK PACS and NATURE TREKS. Clarks has sold TREK shoes since 1971, and it alleges that since that time it has sold in excess of 1,400,000 pairs of TREK shoes and has expended over $650,-000 in advertising these shoes.

Paramount is the owner of the trademark "STAR TREK" which it has employed on its popular movie and television series. Paramount first registered the trademark for use in that context on November 15, 1977. On July 11, 1978, the Patent and Trademark Office granted Paramount four additional STAR TREK registrations for use on paper goods and printed matter, plastic dishes, games, and toys and wearing apparel. Paramount holds no trademark registration for use of STAR TREK on footwear.

Glen has been licensed by Paramount to use the STAR TREK mark in connection with the promotion and sale of footwear. Glen is currently producing children's running shoes, plastic sandals and canvas sneakers under the STAR TREK mark.

Clarks became aware of Glen's use of the STAR TREK mark on or about the time of the commencement of the litigation. In January, 1980, Clarks warned the publisher of "Footwear News," a key trade magazine in the shoe industry, that publication of any advertisement containing the word TREK would be considered a violation of Clarks' trademark. Glen submitted affidavit evidence that as a result of this notice, "Footwear News" refused to publish advertisements for STAR TREK shoes.

Two major merchandising shows in the footwear industry are the National Shoe Fair, which took place in January, 1980, and the New York Fashion Week, starting on February 9, 1980. Glen alleges that Clarks' claims of trademark infringement have interfered with the sales of STAR TREK shoes at the Dallas show, and will impede sales at the New York show.

It is also relevant to the current motion that Clarks has recently obtained a license to use the registered trademark "STAR WARS" on children's running shoes and sneakers.

■ A preliminary injunction may be granted only where the moving party has demonstrated both irreparable injury and either a likelihood of success on the merits or sufficiently serious questions on the merits to make them a fair ground for litigation coupled with a balance of hardships tipping decidedly toward the moving party. *Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 206–07 (2d Cir. 1979); *Jack Kahn Music v. Baldwin Piano & Organ,* 604 F.2d 755, 758–59 (2d Cir. 1979).

If Clarks succeeds on the merits, the failure to enjoin Glen from using the word TREK in its advertisements would result in irreparable harm. *American Home Products v. Johnson Chemical Co.,* 589 F.2d 103, 106 (2d Cir. 1978); *Omega Importing Corp. v. Petri-Kine Camera Co.,* 451 F.2d 1190, 1195 (2d Cir. 1971). However, Clarks has failed to meet its burden with respect to either branch of the second part of the preliminary injunction test.

■ The principal issue in a trademark infringement case under either the Lanham Act or the common law is whether there is a "likelihood that the consuming public will be confused as to the source of the allegedly infringing product." *American Footwear Corp. v. General Footwear Company, Ltd.,* 609 F.2d 655, 664 (2d Cir. 1979); *McGregor-Doniger, Inc. v. Drizzle, Inc.,* 599 F.2d 1126, 1130 (2d Cir. 1979); *Polo Fashions, Inc. v. Extra Special Products, Inc.,* 451 F.Supp. 555, 558 (S.D.N.Y.1978). In assessing this

issue the courts have examined a variety of factors, including the strength of plaintiff's mark, the similarity between the marks, the proximity of the products, the likelihood that the plaintiff will bridge the gap between the products, the method of marketing the two products, the defendant's good faith in adopting the mark, the quality of defendant's products and the sophistication of consumers. *Scarves By Vera, Inc. v. Todo Imports, Ltd. (Inc.)*, 544 F.2d 1167, 1173 (2d Cir. 1976); *Cartier, Inc. v. Three Sheaves Co., Inc.*, 465 F.Supp. 123, 128 (S.D. N.Y.1979). Clarks has failed to sustain its burden of showing a sufficient likelihood of confusion to warrant preliminary injunctive relief.

■ As to the strength of the TREK trademark, the court does not agree with Glen's contention that TREK is a weak mark as applied to footwear. Rather, the mark is at least suggestive, since it requires imagination to discern the nature of the goods sold under the mark. *American Home Products v. Johnson Chemical Co.*, supra, 589 F.2d at 106; *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, 295 F.Supp. 479, 488 (S.D.N.Y.1968). Moreover, the fact that the Patent Office registered the TREK mark creates a strong presumption in favor of its validity. *American Home Products v. Johnson Chemical Co.*, supra at 106. *See also McGregor-Doniger, Inc. v. Drizzle, Inc.*, supra at 1132.

■ Although both Glen and Clarks produce footwear, their shoes differ substantially. TREK shoes have soles of crepe or plastic, and the tops are made of unlined leather. They are designed for adults. STAR TREK shoes are children's play shoes made of plastic, canvas and rubber. Clarks has submitted no proof that its adult hiking and leisure shoes compete even indirectly with Glen's STAR TREK shoes. As in *McGregor-Doniger, Inc. v. Drizzle, Inc.*, supra at 1134, the "differences in appearance, style, function [and] fashion appeal" demonstrate that the "competitive distance" between TREK shoes and STAR TREK sneakers is substantial.

Clarks has also introduced no evidence to show that the mark STAR TREK is confusingly similar to Clarks' registered mark TREK or to its unregistered marks PLAY TREK, TREK PACS, SUN TREK, TREK MOCS and NATURE TREK. These marks are certainly not identical, as were those considered in *American Footwear Corp. v. General Footwear Co. Ltd.*, supra ("bionic"), or *Scarves by Vera, Inc. v. Todo Imports, Ltd. (Inc.)*, supra ("Vera"), and are not as close as those considered in *American Home Products v. Johnson Chemical Co.*, supra ("Roach Motel" and "Roach Inn"); *Cartier, Inc. v. Three Sheaves Co., Inc.*, supra ("Cartier" and "Cattier"); *Miller Brewing Co. v. Carling O'Keefe Breweries*, 452 F.Supp. 429 (W.D.N.Y.1978) ("Highlife" and "Highlite"). The names are more distinct than those considered in other cases in which injunctive relief has been denied. See *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44 (2d Cir. 1978), cert. denied, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979), ("Mushroom" and "Mushrooms"); *Uniroyal, Inc. v. Kinney Shoe Corp.*, 453 F.Supp. 1352 (S.D. N.Y.1978) ("KEDS" and "KiDS").

The styles of lettering used in the marks TREK and STAR TREK are easily distinguishable, and the marketing presentations of Glen and Clarks differ substantially. A Clarks catalogue containing advertisement for TREK shoes emphasizes the British origin of the shoes, their comfort and high quality. On the shoes, the TREK mark is printed on the inner heal, accompanied by Clarks' logo, which consists of the name "Clark's," written in cursive letters, and the outline of a hiker carrying a staff and back pack. By contrast, the name STAR TREK is prominently printed in block letters on either the sides or the bottoms of Glen's childrens shoes, accompanied by pictures of the starship "Enterprise," as well as familiar Star Trek characters such as Mr. Spock, "Scotty" and Captain Kirk. An advertisement for STAR TREK shoes simulates advertisements used in Paramount's movie promotion. The silhouettes of officers of the Enterprise appear against the background of the spaceship speeding through intergalactic realms.

Of course, neither the juxtaposition of the TREK mark to the name "Clarks" and the symbol of a hiker, nor the disparate trade dresses of the products of Clarks and Glen precludes a finding that a likelihood of confusion exists, *American Home Products v. Johnson Chemical Co, supra* at 107. However, "in assessing the similarity of two marks, it is the effect upon prospective purchasers that is important," and accordingly, this court must "focus[ ] on the general impression conveyed by the two marks." *McGregor-Doniger, Inc. v. Drizzle, Inc., supra,* 599 F.2d at 1133, 1134. Here, the TREK mark conveys an image of rusticity and durability, while the STAR TREK mark summons images of flight in outer space.

There is no evidence that Glen has acted in bad faith in utilizing the STAR TREK mark. This is not a case such as *American Home Products v. Johnson Chemical Co., supra,* or *Polo Fashions, Inc. v. Extra Special Products, Inc., supra,* in which there was evidence of a deliberate attempt to imitate the plaintiff's trademark and product. Rather, it would appear that the adoption by Glen of the STAR TREK mark is designed to capitalize on the large-scale publicity campaign for the movie version of "Star Trek," as well as existing public familiarity with "Star Trek" themes and characters.

Clarks has presented no evidence that it intends to "bridge the gap" by introducing a line of children's play shoes under the mark TREK. To the contrary, Clarks admits that it is currently manufacturing children's recreational footwear using the trademark "STAR WARS," which shoes will compete directly with the STAR TREK shoes produced by Glen. There is also no evidence that Glen intends to move into the production of recreational hiking shoes. Although Glen does admit that it is considering production of men's running shoes, this possibility is not sufficiently great to warrant entry of a preliminary injunction at this time against use of the trademark STAR TREK on children's shoes.

Clarks has tendered no proof concerning the prices, the quality, or the sophistication of buyers of the two products. In view of the divergence in type of product, appearance and marketing technique, as well as the familiarity of the trademark STAR TREK, these factors are relatively unimportant in this case, as Clark has failed to show that even undiscerning consumers would be likely to confuse the origin of STAR TREK shoes. Moreover, Clarks has introduced no evidence whatsoever of actual confusion by consumers.

These factors compel the conclusion that Clarks has made an insufficient showing of a likelihood of success in this case to warrant entry of a preliminary injunction. Because of this conclusion, there is no need for this court to rule upon Paramount's contention that it has established priority of use of the STAR TREK mark on footwear.

Clarks has also failed to demonstrate that the equities in this case tip decidedly in its favor. The evidence adduced at the hearing indicates that issuance of a preliminary injunction in this case will prevent Glen from presenting and selling its products at the New York Fashion Week, which will substantially impede its business. Further, this court takes note of the possibility, mentioned above, that one reason for the institution of this action may be to preclude Glen's STAR TREK shoes from competing with Clarks' STAR WARS shoes. In view of all these circumstances, Clarks has failed to demonstrate that the equities tip decidedly in its favor; therefore issuance of a preliminary injunction is inappropriate under the second branch of the Second Circuit test.

Glen and Paramount are not entitled to a preliminary injunction on their counterclaim against interference with their businesses by Clarks. Glen and Paramount have made no showing that any injury they may suffer as a result of unwarranted interference with their businesses by Clarks will not be compensable in money damages. Accordingly, the motion by Glen and Paramount for preliminary injunctive relief is denied.

IT IS SO ORDERED.