E.S. ORIGINALS INC., Plaintiff,

v.

The STRIDE RITE CORPORATION, Defendant.

No. 82 Civ. 8014 (JES).

United States District Court,
S.D. New York.

March 20, 1987.

Taggart & Colucci, New York City (Frank J. Colucci and Robert S. Weisbein, of counsel), for plaintiff.

Graham, Campaign & McCarthy, P.C., New York City (Keith E. Danish, of counsel), and Fish & Richardson, Boston, Mass. (Frank P. Porcelli, John M. Skenyon and Robert E. Hillman, of counsel), for defendant.

SPRIZZO, District Judge:

In this action for declaratory and injunctive relief, plaintiff E.S. Originals Incorporated ("ESO") seeks a declaration that its use of the trademark "ZIP 'N GO" for its zippered athletic shoes does not infringe the "ZIPS" trademark used by the Stride Rite Corporation ("Stride Rite") for its children's athletic shoes. *See* Complaint at 3–4. ESO also seeks an injunction barring Stride Rite from charging ESO or any of its customers with trademark infringement or unfair competition by reason of the distribution and sale of footwear bearing the trademark "ZIP 'N GO." *See id.* at 4. Stride Rite has counterclaimed, alleging that ESO's use of "ZIP 'N GO" constitutes trademark infringement and false designation of origin under the Lanham Act, *see* 15 U.S.C. §§ 1114(1) and 1125(a) (1982), and unfair competition and trademark infringement under common law. *See* Answer and Counterclaim at 5–7.[1] The parties have

agreed that because only Stride Rite is alleging trademark infringement, false designation of origin, and unfair competition, Stride Rite bears the burden of persuasion in this case. *See* Tr. at 16. Consequently, the Court has treated this case procedurally as if Stride Rite were the plaintiff in an action for trademark infringement, false designation of origin, and unfair competition.

A bench trial was held and both parties filed trial briefs and proposed findings of fact and conclusions of law. Upon considering all of the evidence presented at trial, as well as all of the arguments made by the parties' counsel at trial and in their papers filed with the Court, the Court concludes that Stride Rite is not entitled to judgment on any of its counterclaims. As a consequence, ESO is entitled to the declaratory judgment it seeks, although the Court denies ESO's request for injunctive relief. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52.

## FACTS

Stride Rite is a Massachusetts corporation which has been engaged in the children's footwear business since 1919 and is well known for the quality of its children's footwear. *See* Tr. at 65, 393. Prior to 1976, Stride Rite marketed its children's athletic shoes under the trademark "STRIDE RITE," *see id.* at 184; however, in or about July, 1976, Stride Rite began marketing a line of children's athletic shoes under the combined name "ZIPS by Stride Rite," which was initially applied to a line of conventional lace-and-tie children's sneakers. *See id.*[2] In 1982, however, Stride Rite added a zippered sneaker to the "ZIPS" line. *See* DX–J. Stride Rite began

---

1. Defendant's answer also included a counterclaim under New York's anti-dilution statute, Gen.Bus.Law § 368–d (McKinney 1984). *See* Answer at 7. In the Pre-Trial Order, however, the defendant failed to make any reference to § 368–d or to include any contention that the plaintiff's shoes were of an inferior quality. Therefore, the Court ruled at trial that the defendant's claim of dilution was not properly before the Court. *See* Tr. at 233–43; *see also*

Fed.R.Civ.P. 16(e); *Fogel v. Chestnutt,* 533 F.2d 731, 738 n. 7 (2d Cir.1975) (point raised in answer but not included in pre-trial order deemed abandoned), *cert. denied,* 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976).

2. Stride Rite owns U.S. Trademark Registration No. 1,125,588 on "ZIPS" for children's sneakers. *See* DX–A.

marketing its zippered sneaker to the general public in its Fall 1983 advertising campaign. *See* Tr. at 88–91; DX–J.

Combining "ZIPS" with "by Stride Rite" was the result of a marketing decision by Stride Rite to select a mark that would appeal to both children and their parents. *See* Tr. at 255, 303, 321, 337. The president of Stride Rite's footwear division testified that Stride Rite's goal was to establish "ZIPS" as a status symbol for children and, at the same time, inform parents that "ZIPS" are quality shoes by Stride Rite. *See id.* at 106–08, 149, 151. Thus, although "ZIPS" sneakers are targeted to appeal to children, *see id.* at 129, Stride Rite's promotional materials and television commercials clearly identify "ZIPS" as a Stride Rite shoe and in some instances indicate the availability of this shoe in Stride Rite stores. *See* Tr. at 151–57. In addition, all "ZIPS" sneakers are plainly marked as "ZIPS by Stride Rite" on the shoes themselves. *See id.* at 160.

Stride Rite emphasizes the exceptional fit of its "ZIPS," which come in three widths, *see id.* at 310, and the expertise of "ZIPS" sales personnel, which are specially trained by Stride Rite, *see id.* at 65. "ZIPS" routinely sell at retail for approximately $20, *see id.* at 192–94, and are sold almost exclusively at Stride Rite stores, booteries, family stores, and better department stores, *see id.* at 247–48.

ESO is a New York corporation engaged in the importation, sale, and marketing of footwear throughout the United States. Its products include athletic, work, casual, and dress shoes for all ages. *See* Tr. at 356.

In early 1982, ESO developed what was apparently the first zippered athletic shoe. *See id.* at 363–65. The zipper on this shoe runs parallel to the laces and enables the wearer to put on or take off the shoe without untying the laces. *See id.* at 365. To highlight this zipper feature on its shoes, ESO established "ZIP 'N GO" as its trademark.[3] An ESO executive testified that he adopted "ZIP 'N GO" because it suggests that the shoes have a zipper and can be put on quickly. *See id.*

Prior to the adoption and first use of "ZIP 'N GO" by ESO in May of 1982, ESO's trademark counsel conducted a search to determine the availability of the "ZIP 'N GO" trademark. *See* Tr. at 365; *see also* PX–16(A)–(E). The search revealed a number of marks containing the word "zip," including Stride Rite's "ZIPS by Stride Rite," but ESO's counsel concluded that there was no likelihood of confusion between the two marks. *See* Tr. at 367; *see also* PX–13. Moreover, as noted *supra*, Stride Rite did not market a zippered shoe at the time ESO adopted the "ZIP 'N GO" mark; Stride Rite introduced its zippered shoe after ESO adopted the "ZIP 'N GO" mark. An application for registration of the ESO trademark was duly filed in the United States Patent and Trademark Office. *See* Tr. at 370; *see also* PX–17.

In contrast to "ZIPS by Stride Rite," ESO's "ZIP 'N GO" sneakers are available in only one width, *see* Tr. at 313, and are marketed for both children and adults, *see id.* at 361. Most of ESO's advertising of "ZIP 'N GO" sneakers has been directed to the trade, *see id.* at 358; however, retailers who purchase "ZIP 'N GO" sneakers from ESO also advertise, and these ads have been targeted to all age groups, *id.* at 362; *see, e.g.,* DX–Y. "ZIP 'N GO" athletic shoes are not sold to department stores; instead, they are sold primarily to large mass merchandisers such as K–Mart, Zayre, and J.C. Penney. *See* Tr. at 357.[4] Children's sizes of "ZIP 'N GO" sneakers sell at retail for approximately $12 to $15,

---

3. Until 1982, ESO used no trademarks of its own on its products. *See* DX–V; Tawil Dep. at 16. Now, however, ESO uses several trademarks on its footwear. *See* Tr. at 358.

4. Although "ZIPS" are sold in at least one discount store, Marshalls, *see* Tr. at 66, and a single close-out lot of "ZIPS" was sold to K–Mart prior to the introduction of "ZIP 'N GO" sneakers, *see id.* at 133, no further evidence was presented

or 25% to 40% less than "ZIPS by Stride Rite." [5]

On November 12, 1982, Stride Rite sent letters to ESO and to one of ESO's customers, Edison Brothers, Inc., claiming that the use of ESO's trademark "ZIP 'N GO" infringes Stride Rite's "ZIPS" trademark and demanding that all such use of the mark by ESO be discontinued. *See* PX–39. Thereafter, on December 2, 1982, ESO commenced this declaratory judgment action against Stride Rite. *See* Complaint at 1, 4. Stride Rite counterclaimed, seeking an injunction barring any further use by ESO of the "ZIP 'N GO" mark for sneakers and an order preventing the issuance by the United States Patent and Trademark Office of ESO's pending trademark application. *See* PTO at 3. Stride Rite also seeks recovery of ESO's profits from the sale of its sneakers under the "ZIP 'N GO" mark and treble damages under 15 U.S.C. § 1117. *See id.* Both parties seek costs and attorney fees.

## DISCUSSION

Neither party disputes that to prevail on a claim of trademark infringement, false designation of origin, or unfair competition under either federal or New York law, the party making the claim must establish likelihood of confusion as to source. *See Sally Gee, Inc. v. Myra Hogan, Inc.*, 699 F.2d 621, 624 (2d Cir.1983); *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 441 F.Supp. 1220, 1234 (S.D.N.Y.1977), *aff'd*, 580 F.2d 44 (2d Cir.1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). In determining whether the requisite likelihood of confusion is present, the pivotal inquiry is "whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the goods in question." *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir.1978) (per curiam) (citation omitted), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). As noted *supra*, the parties agree that since only Stride Rite is alleging trademark infringement, false designation of origin, and unfair competition, Stride Rite bears the burden of proof as to the likelihood of confusion in this case.

Assessing the likelihood of confusion between the two marks requires an examination of the now classic factors discussed in *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).[6] These factors include (1) the strength of the senior user's mark; (2) the degree of similarity between the two marks; (3) the competitive proximity of the products; (4) the likelihood the senior user will "bridge the gap"; (5) evidence of actual confusion; (6) the junior user's good faith in adopting its mark; (7) the quality of the junior user's product; (8) and the sophistication of the buyers. *See id.*

### 1. *Strength of the Senior Mark*

At trial, Stride Rite introduced evidence of its relatively aggressive advertising of "ZIPS" and the significant share of the children's sneaker market held by "ZIPS." *See Tr.* at 189–90; DX–S. Although the Court concludes from this evidence that the "ZIPS" mark has acquired a sufficient degree of distinctiveness among consumers to entitle the mark to some protection, the

---

that "ZIPS" sneakers and "ZIP 'N GO" athletic footwear are sold in the same stores.

**5.** Stride Rite's "ZIPS" routinely sell at retail for around $20, *see* Tr. at 192–94, and the average wholesale price is approximately $10, *see id.* at 191, 193. ESO's "ZIP 'N GO" children's sneakers wholesale in the range of $6.00 to $7.50. *See id.* at 381. Assuming the mark up on "ZIP 'N GO" sneakers to be 100%, ESO's sneakers would retail at $12 to $15, or 25% to 40% less than "ZIPS." Stride Rite concedes that "ZIP 'N GO" sneakers routinely sell for "much less than $18," *see* Stride Rite Corporation's Proposed Findings

of Fact and Conclusions of Law ("SR's Proposed Findings") at ¶ 87, and a Stride Rite employee testified that the highest priced children's "ZIP 'N GO" sneaker he had seen sold for $14.99. *See* Tr. at 228.

**6.** Although the *Polaroid* standards were enunciated in the context of noncompeting goods, *Polaroid* has been expressly extended to apply to cases involving competing goods. *See Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 214 (2d Cir.1985); *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 966–67 (2d Cir.1981).

strength of "ZIPS" alone does not bar ESO from using the "ZIP 'N GO" mark.[7]

### 2. Degree of Similarity between the Two Marks

■ The fact that the "ZIPS" and "ZIP 'N GO" marks share a common word does not necessarily render them confusingly similar, as similarity in and of itself is not dispositive. See McGregor-Doniger Inc. v. Drizzle Inc., 599 F.2d 1126, 1133 (2d Cir.1979). Instead, the crucial inquiry is whether the similarity is likely to cause confusion. See id. Therefore, when assessing similarity, the court must look at the full name of each party's product, see Thompson Medical Co. v. Pfizer Inc., 753 F.2d 208, 218 (2d Cir.1985); Universal City Studios, Inc. v. Nintendo Co., 746 F.2d 112, 117 (2d Cir.1984), and may take into account the fact that the marks are visibly and audibly distinguishable, see, e.g., Universal City Studios, Inc., supra, 746 F.2d at 117 ("Donkey Kong" and "King Kong"); Sally Gee, Inc., supra, 699 F.2d at 624 ("Sally Gee" and "Sally Lee").

Applying these precepts, the Court concludes that the marks "ZIPS" and "ZIP 'N GO" look and sound different. This conclusion is plain from an examination of the marks. Moreover, the "ZIPS" trademark is always used in conjunction with the Stride Rite company name and is linked prominently with its line of products. See, e.g., Tr. at 151–57. This prominent addition of the words "by Stride Rite" to "ZIPS" whenever the "ZIPS" mark appears on the product or in advertising and promotional materials significantly reduces the likelihood of confusion between these distinguishable marks. Cf. Vitarroz Corp. v. Borden, Inc., 644 F.2d 960, 968–69 (2d Cir. 1981) (no likelihood of confusion between "Bravo's" and "Bravo" where both snack foods prominently display name of manufacturer); McGregor-Doniger Inc., supra, 599 F.2d at 1133–34 (no likelihood of confusion between "DRIZZLE" and "DRIZZLER" coats where latter paired with prominent display of manufacturer's name); Uniroyal, Inc. v. Kinney Shoe Corp., 453 F.Supp. 1352, 1355–56 (S.D.N.Y.1978) (no likelihood of confusion between "Keds" and "Kinney KiDS" children's sneakers).

### 3. Competitive Proximity of the Products

In assessing product proximity, the nature of the products themselves, as well as the structure of the relevant market, must be considered. See Vitarroz Corp., supra, 644 F.2d at 967. Although the products here are very similar, the Court concludes that they differ in several ways that are material to consumers. See Vitarroz Corp., supra, 644 F.2d at 967. As noted supra, the sneakers are distributed through dissimilar channels of trade, and the marketing approaches for the two products differ markedly. These factors tend to minimize any possibility of confusion. See Plus Products v. Plus Discount Foods, Inc., 722 F.2d 999, 1006–08 (2d Cir. 1983); Vitarroz Corp., supra, 644 F.2d at 967. Sneakers which are a status symbol and feature the endorsement of Stride Rite have a markedly different sales appeal than another athletic shoe which, although it bears a form of the word "zip" in its trademark, is sold by a relatively unknown manufacturer in discount stores. Cf. Clarks of England, Inc. v. Glen Shoe Co., 485 F.Supp. 375, 378 (S.D.N.Y.1980). In addition, as noted supra, "ZIPS" sneakers bear retail prices considerably higher than those of "ZIP 'N GO" sneakers, another

---

**7.** The decision of the United States Patent and Trademark Office to register "ZIPS" without requiring proof of secondary meaning creates a rebuttable presumption that Stride Rite's mark is at least suggestive and thus entitled to protection without proof of secondary meaning. See McGregor-Doniger Inc. v. Drizzle Inc., 599 F.2d 1126, 1132 (2d Cir.1979). ESO has failed to overcome this presumption, despite its argument that the strength of the "ZIPS" mark is weakened by the lack of originality of the word "ZIPS" and the extensive third-party use of variations on the root word "zip." The presence of an everyday or common word in a trademark and the extensive use of variations of that word in third party registrations do not preclude a finding that the mark in question is a strong one. See, e.g., Scarves by Vera, Inc. v. Todo Imports Ltd., 544 F.2d 1167, 1173–74 (2d Cir. 1976); Playboy Enterprises, Inc. v. Chuckleberry Publishing, Inc., 486 F.Supp. 414, 421 (S.D.N.Y. 1980).

factor which tends to minimize any possibility of confusion. *Cf. American Greetings Corp. v. Easter Unlimited, Inc.*, 579 F.Supp. 607, 617 (S.D.N.Y.1983); *Original Appalachian Artworks, Inc. v. Blue Box Factory, Ltd.*, 577 F.Supp. 625, 632 (S.D.N.Y.1983). Finally, there has been no evidence presented that a child or his parent would accept ESO's "ZIP 'N GO" sneakers as Stride Rite's "ZIPS" sneakers. Indeed, the thrust of Stride Rite's marketing campaign has been designed to so plant the "ZIPS" mark in the mind of the child that he will accept no other, a campaign that Stride Rite's own witness testified was effective. *See* Tr. at 102, 306–07, 344.[8]

### 4. *Bridging the Gap*

In the context of assessing the likelihood of confusion, "bridging the gap" refers to "the senior user's interest in preserving avenues of expansion and entering into related fields." *See Mushroom Makers, Inc., supra*, 441 F.Supp. at 1228. Stride Rite presented no evidence that it intends to expand its use of "ZIPS" athletic shoes into the adult footwear market or into the discount market. Furthermore, Stride Rite's use of the "ZIPS" trademark is currently limited to children's sneakers, notwithstanding Stride Rite's unwillingness to so limit its claims. *Compare* PX–58 *with* Tr. at 291.[9] Thus, there appears to be little possibility that Stride Rite intends to bridge the gap that currently exists between it and ESO.

### 5. *Evidence of Actual Confusion*

Although not a prerequisite for recovery, the Second Circuit has held that the lack of evidence of actual confusion for a period "during which substantial sales occurred, is a strong indicator that the likelihood of confusion is minimal." *See Plus Products, supra*, 722 F.2d at 1006 (citation and footnote omitted); *accord Lever Bros. Co. v. American Bakeries Co.*, 693 F.2d 251, 257 (2d Cir.1982); *McGregor-Doniger Inc., supra*, 599 F.2d at 1136. In this case, despite almost two years of concurrent use of the marks, this Court has been provided with no significant evidence of actual confusion.

**8.** Stride Rite correctly contends that adequate consideration must be given to evidence of similiarity of color scheme and product decoration because these factors are probative of likelihood of confusion. *See* SR's Proposed Findings at ¶ 16 (citing *Harold F. Ritchie, Inc. v. Chesebrough-Pond's, Inc.*, 281 F.2d 755, 760 (2d Cir. 1960)); *see also Playboy Enterprises, Inc., supra*, 486 F.Supp. at 424 (court more likely to find infringement in cases involving "essentially the same product" sold in same channels of trade than where dissimilar, noncompeting products involved). In this case, the products in question are similar in that both sneakers have sideflashes and their trademarks are displayed on the tongue and backstay of the shoes; however, the Court notes that the tongue and backstay are fairly common and logical places to display the marks, and sideflashes are commonly found on sneakers. Thus, these circumstances do not demonstrate either an intent to copy or the likelihood of confusion which it is Stride Rite's burden to establish. Moreover, after a thorough examination of the many exhibits introduced by each party, the Court concludes that there is no substantial likelihood of confusion even as to those sneaker designs Stride Rite cites as particularly graphic examples of similarity. *See, e.g.,* The Stride Rite Corporation's Trial Brief ("SR's Trial Brief") at 6.

Although there are similarities in the color schemes used in connection with the two marks, testimony which the Court finds credible indicated independant reasons for the choice of these colors by ESO. One of ESO's executives, Mr. Tawil, testified that the mark "ZIP 'N GO" is frequently presented in red, yellow, and green "to evoke the feeling of … a traffic light…." *See* Tr. at 366. In addition, he testified as to how red and yellow were chosen for the "ZIP 'N GO" hang tags. Red was chosen to present the impression of a stop sign, as ESO's goal with its "stop" hang tags was to "stop the customer." *See id.* at 368. Yellow was chosen to compliment and contrast with red. *See id.* at 368–69; *compare Harold F. Ritchie, Inc., supra*, 281 F.2d at 759 (noting that name and package of "Valcream" were chosen with "Brylcreem" name and package in mind). Furthermore, the color scheme to which Stride Rite objects is not used on all of ESO's promotional materials or on all of the "ZIP 'N GO" shoes themselves. *See* Tr. at 377–79.

**9.** It is significant that Stride Rite limited its registration of "ZIPS" to children's sneakers. Its registration was so limited after its application for registration for athletic type footwear, namely sneakers, was opposed in the Patent and Trademark Office by the University of Akron, which used the name "ZIPS" on its athletic wearing apparel and anticipated that it might expand its line of product to include athletic shoes. *See* PX–58.

■ The only evidence of actual confusion that Stride Rite introduced at trial was the testimony of a Stride Rite executive that in several instances, "ZIP 'N GO" sneakers were "passed-off" by store clerks in response to his requests for "ZIPS." *See* Tr. at 127–31. This "informal survey," which was made two days before trial, *see id.*, is not a legally sufficient basis upon which to predicate a finding of actual confusion, and in any event, does not persuade the Court that there has been any actual confusion, especially in view of all the other evidence in the case, *cf. Universal City Studios, Inc., supra,* 746 F.2d at 118.[10] Furthermore, it is significant that Stride Rite did not undertake a consumer survey, a failure which strongly suggests that a likelihood of confusion cannot be shown. *See Information Clearing House, Inc. v. Find Magazine,* 492 F.Supp. 147, 160 (S.D. N.Y.1980); *Mushroom Makers, Inc., supra,* 441 F.Supp. at 1231; *cf. McGregor-Doniger Inc., supra,* 599 F.2d at 1136. This is especially true since this case was not tried on an emergency basis, and there was therefore ample opportunity to undertake such a survey.

### 6. *Junior User's Good Faith in Adopting its Mark*

■ ESO admits that it was aware of Stride Rite's "ZIPS" mark at the time it selected "ZIP 'N GO," *see* Tr. at 367, 393–94, but knowledge of prior use alone does not in itself constitute a showing of bad faith. *See E.R. Squibb & Sons, Inc. v. Cooper Laboratories, Inc.,* 536 F.Supp. 523, 532 (S.D.N.Y.1982); *Information Clearing House, Inc., supra,* 492 F.Supp. at 161. Moreover, selecting a mark because it conveys the product's purpose or characteristics has been held to demonstrate good faith. *See Del Laboratories, Inc. v. Alleghany Pharmacal Corp.,* 516 F.Supp. 777, 784 (S.D.N.Y.1981).

The Court finds that ESO's explanation of its purpose in selecting the "ZIP 'N GO" mark is reasonable and credible. Moreover, Stride Rite does not dispute that the "ZIP 'N GO" mark was adopted by ESO to coincide with ESO's introduction of its unique zippered athletic shoes, *see* Tr. at 363–65, or that Stride Rite did nor market a zippered shoe until after the introduction of ESO's "ZIP 'N GO" sneakers, *see id.* at 88.[11] Furthermore, ESO's request for a trademark search and reliance on its trademark counsel's opinion that "ZIP 'N GO" was available for adoption, *see* Tr. at 366–67, supports the conclusion that ESO did not act in bad faith, *see Information Clearing House, Inc., supra,* 492 F.Supp. at 161; *Mushroom Makers, Inc., supra,* 441 F.Supp. at 1230.[12]

---

10. While evidence of passing off may be relevant in determining the likelihood of confusion between similar products, Stride Rite has failed to cite a single case where the finding of likelihood of confusion was based solely on evidence of passing off. Although Stride Rite correctly quotes *Stardust, Inc. v. Weiss,* 79 F.Supp. 274, 280 (S.D.N.Y.1948), as stating that confusion evidenced by store clerks when plaintiff's product was requested was "convincing proof" as to the likelihood of confusion, *see* SR's Proposed Findings at ¶ 22, even a cursory reading of the *Stardust* case will demonstrate that the court relied upon additional evidence, including testimony of retailers and letters received by plaintiff, in making its determination that a likelihood of confusion existed with respect to "STARDUST" and "STARLIGHT" brassieres, *see Stardust, supra,* 79 F.Supp. at 278–79. Moreover, even if the instances of passing off encountered by Stride Rite in its informal survey can be said to demonstrate that the store clerks were confused as to the origin of the sneakers they sold or that they intended to deceive the purchasers as to the shoes' origin, the Court concludes that in light of all the additional evidence in this case, Stride Rite has failed to establish a likelihood of confusion on the part of "an appreciable number of ordinarily prudent purchasers...." *Mushroom Makers, Inc. v. R.G. Barry Corp.,* 580 F.2d 44, 47 (2d Cir.1978) (per curiam) (citation omitted), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

11. Stride Rite's zipper shoe was not introduced until after this lawsuit was commenced. *See* Tr. at 88. In fact, ESO suggests that Stride Rite introduced its zippered sneakers "for purposes of this lawsuit," *see* Plaintiff's Annotated Proposed Findings of Fact and Conclusions of Law at ¶ 46, an assertion that Stride Rite disputes, *see* SR's Proposed Findings at ¶ 61. In view of its holding in ESO's favor on other grounds, the Court need not decide this issue.

12. Counsel for Stride Rite argues that the bad faith of ESO is demonstrated by ESO's consideration of "ZIPPEROOS" as a potential trademark for its zippered athletic footwear so that ESO could benefit from the success of "KANGA-

## 7. Quality of the Junior User's Product

Stride Rite in its Pre-Trial Order did not challenge the quality of ESO's sneakers.[13] In any event, an ESO executive testified as to quality control in ESO's manufacturing plants. *See* Tr. at 387. He also testified that he was unaware of any complaints regarding the quality of "ZIP 'N GO" shoes and that returns were less than one percent of sales. *See id.* at 389. This testimony, which the Court finds credible, weighs against Stride Rite. *Cf. Lever Bros. Co., supra,* 693 F.2d at 258.

## 8. Sophistication of the Purchaser

Stride Rite contends that the child or the child-parent team is the relevant purchaser, *see* The Stride Rite Corporation's Trial Brief at 23; Tr. at 120, 122–25, whereas ESO claims that the parent is the relevant purchaser, *see* Plaintiff's Brief Before Trial at 21 (citing *Uniroyal, Inc., supra,* 453 F.Supp. at 1356). Although there is case authority to the effect that children's coercive requests must be considered in evaluating the sophistication of the purchaser of certain children's goods,[14] Stride Rite has

ROOS," a popular brand of children's sneakers. *See* SR's Trial Brief at 22; *see also* Tr. at 396–97. However, the managing director of the division that markets "ZIP 'N GO" sneakers testified that ESO also considered "ZIP 'N TIE" and "ZIP IT" as potential trademarks for its sneakers. *See* Tr. at 365–66. Instead of establishing ESO's bad faith, this testimony lends support to ESO's contention that it wanted a mark which would convey the zipper feature of its athletic footwear, because the only common feature in the marks considered is the presence of "zip." Stride Rite also suggests that ESO's failure to prominently indicate on the "ZIP 'N GO" sneakers themselves that the shoes are manufactured by ESO is evidence of bad faith on ESO's part. *See* SR's Trial Brief at 10; SR's Proposed Findings at ¶¶ 17, 25. The Court concludes, however, that ESO's explanation for this absence is credible. The managing director of the division that manufactures "ZIP 'N GO" athletic shoes testified that there was no reason for the ESO name to be displayed prominently on the shoes themselves because the ESO name is not known to most consumers. *See* Tr. at 379–80. However, the shoes do contain the notation "TM E.S.O." on the back side of the tongue tag, and the hang tags attached to each pair of "ZIP 'N GO" sneakers clearly identify ESO as the manufacturer of the shoes. *See id.* at 206.

13. At trial, Stride Rite sought to introduce evidence of product quality comparison, but the Court refused to consider such evidence because no claim of inferior quality was made in the Pre-Trial Order. *See* Tr. at 233–43; *see also* Fed.R.Civ.P. 16(e), *Fogel, supra,* 533 F.2d at 738 n. 7. This offer of proof related to the testimony of Mr. Cocozza, Stride Rite's corporate vice president of merchandising, whose qualifications as an expert in this area, were, in any event, questionable. *See Tr.* at 230–31; 233. Moreover, the proffered testimony was based on what Mr. Cocozza had been told about the results of a laboratory test performed by other Stride Rite employees comparing the nylon of both shoes. This testimony, as hearsay, was not properly admissible for its truth. *See id.* at 232–33. In any event, given all of the other circumstances demonstrating that Stride Rite is

not entitled to relief, even if this issue had not been abandoned and competent proof had been offered with respect thereto, the Court's ultimate conclusion in ESO's favor would not have been changed.

14. In *Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.,* 559 F.Supp. 1189 (E.D.N.Y.1983), both plaintiff and defendant sold moderately-priced children's clothing; plaintiff, in its Toys "R" Us Stores and defendant, in its Kids 'r' Us stores. *See id.* at 1193–94. Judge Glasser noted:

> A common, if not nagging, experience of parenthood is the coercion of children that their clothing be of a current style and purchased in a designated place. Those vigorous promptings of children to which parents not infrequently succumb make the children, in reality, the true purchasers with the resultant lowering of the level of sophistication.

*Id.* at 1199; *see also General Foods Corp. v. Mellis,* 203 U.S.P.Q. 261, 263 (S.D.N.Y.1979) (sophistication of buyers of candy and rock records not high as "consuming universe to which the products are directed is that of children"); *Blake Publishing Corp. v. O'Quinn Studios, Inc.,* 202 U.S.P.Q. 848, 858 (S.D.N.Y.1979) (substantial portion of magazine's readership comprised by children under sixteen who are "not likely to bring a great deal of care and sophistication to their purchasing decisions"). The Court does not necessarily agree that sophistication of the purchaser is necessarily diminished because the product is targeted to children. A child carefully programmed by an effective advertising campaign is most likely to insist on the advertised product and is not likely to accept a substitute. In this respect at least, the sophistication issue may cut against the proponent of the advertising campaign. Indeed, as noted above, "ZIPS" sneakers are a highly and effectively advertised status symbol, and there is no evidence that a child would confuse "ZIP 'N GO" sneakers with "ZIPS," or would believe that the two types of sneakers came from the same source, or would accept a substitute for what he had been programmed to demand. *Cf. Original Appalachian Artworks, Inc. v. Blue Box Factory, Ltd.,* 577 F.Supp. 625, 632 (S.D.N.Y.1983).

presented no evidence from which the Court may infer that either the parent or the child is likely to be confused into believing that "ZIP 'N GO" athletic shoes are the same as "ZIPS" athletic shoes or that the two shoes emanate from the same source. In fact, the testimony of Stride Rite executives indicates that "ZIPS" are something of a status symbol among children aged two to eleven. *See, e.g.,* Tr. at 102, 306–07, 344. Thus, the Court concludes that even if the sophistication of the child-parent team is considered, the value of "ZIPS" as a status symbol would increase rather than impair the level of sophistication of the purchaser. *Cf. McGregor-Doniger Inc., supra,* 599 F.2d at 1137 ("[t]he greater the [monetary] value of an article the more careful the typical consumer can be expected to be").

9. *Conclusions As To Likelihood Of Confusion*

■ The Court, therefore, concludes that there is no likelihood of confusion between the "ZIPS" and "ZIP 'N GO" trademarks. Although both marks contain a form of the word "zip" and both marks are applied to sneakers, these similarities, when all the *Polaroid* factors are considered, are insufficient to establish that the marks are confusingly similar under the Lanham Act. Stride Rite's failure to establish a likelihood of confusion is also fatal to its state and common law trademark infringement claims. *See Sally Gee, Inc., supra,* 699 F.2d at 624.

## CONCLUSION

For the aforementioned reasons, all of Stride Rite's counterclaims for injunctive relief and damages are denied. ESO's request for declaratory relief is granted to the following extent:

(a) Plaintiff, ESO, has the right to advertise, offer for sale, and sell footwear bearing its "ZIP–N–GO" trademark;

(b) Such advertising, offers for sale, and sales of ESO's footwear bearing the trademark "ZIP–N–GO" do not constitute infringement of Stride Rite's "ZIPS" trademark or unfair competition with Stride Rite.

Given the Court's holding, the Court would not expect that Stride Rite will continue to charge ESO or its customers with trademark infringement or unfair competition in connection with the distribution and sale of "ZIP 'N GO" footwear. Nor has ESO produced any evidence that Stride Rite will continue to make such charges or otherwise established possible irreparable injury. Therefore, ESO's request for injunctive relief is hereby denied. *Cf. Dallas Cowboys Cheerleaders, Inc. v. Pussycat Cinema, Ltd.,* 604 F.2d 200, 206–07 (2d Cir.1979).

Finally, because the Court indicated at trial that it would address the issue of attorney fees after deciding this case on its merits, the parties have not yet briefed the attorney fees issue. Therefore, the parties shall submit their briefs on this issue on or before April 24, 1987. Reply briefs shall be filed on or before May 8, 1987.

It is SO ORDERED.